# IN THE SUPREME COURT OF IOWA

No. 17–0791

Filed November 2, 2018

**RONALD DWIGHT KUNDE,**

Appellant,

vs.

**ESTATE OF ARTHUR D. BOWMAN** and **DIANE ENGELKINS,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Jackson County, Nancy S. Tabor, Judge.

The parties seek further review of a decision by the Iowa Court of Appeals affirming the district court's dismissal of the plaintiff's unjust enrichment and quantum meruit claims and reversing the district court's dismissal of the plaintiff's promissory estoppel claim. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

D. Flint Drake and Samuel M. DeGree of Drake Law Firm, P.C., Dubuque, for appellant.

Bradley T. Boffeli of Boffeli & Spannagel, P.C., Maquoketa, for appellees.

**APPEL, Justice.**

In this case, a farmer sued his neighbor's heirs, claiming, among other things, that he and the decedent entered into an option contract to purchase farmland that was subject to a written lease and upon which the farmer made substantial improvements at his expense. In the alternative, the farmer sought to recover under various equitable theories of promissory estoppel, quantum meruit, and unjust enrichment.

A jury found in favor of the plaintiff on his contract claim and awarded damages. After the verdict, however, the district court granted the defendants' motion for a directed verdict on the contract claim. The district court refused to order a new trial on the plaintiff's alternative equitable theories.

On appeal, the court of appeals affirmed the directed verdict on the contract claim but remanded the case to the district court for a trial on the equitable claims. On remand, the district court granted the defendants' motion for summary judgment on the equitable claims.

On a second appeal, the court of appeals again reversed the judgment of the district court. The court of appeals found that the claims of unjust enrichment and quantum meruit failed as a matter of law because the parties had express agreements governing improvements to the leasehold and allocating the expenses of the improvements. On the claim of promissory estoppel, however, the court of appeals concluded that the presence of agreements related to the leasehold and improvements was not determinative. Instead, the court of appeals reasoned that what was required to give rise to a claim of promissory estoppel was not an "agreement" but a "promise." As a result, the court of appeals reversed the district court and remanded the matter for a new trial.

We granted further review. For the reasons expressed below, we vacate the decision of the court of appeals, affirm the district court's dismissal of the unjust enrichment and quantum meruit claims, and reverse the district court's dismissal of the promissory estoppel claim.

## I. Procedural and Factual Background.

Viewed in the light most favorable to the plaintiff, the summary judgment record shows the following facts. Ronald Kunde purchased farmland along with a residence in Jackson County in 2000. He bought additional ground in 2007. Kunde's farm was adjacent to a 102-acre farm owned by Arthur Bowman.

Kunde and Bowman were neighbors who engaged in an occasional "hello" and brief discussion concerning farming practices. At trial, Kunde testified that in the fall of 2007, Bowman approached Kunde and asked if he would be willing to rent his farm. Kunde responded by asking whether Bowman's wife would rent or sell farmland she owned. Bowman told Kunde that his wife's property had been sold but that Bowman would consider selling his own property for $1900 per acre. Kunde testified he told Bowman that the figure was too low and the parties agreed on a price of $3000 per acre. Kunde told Bowman he wanted to talk with his brother about the transaction. Bowman told Kunde that he could rent the farm in the meantime and that he could purchase the property at his option.

The parties discussed the possibility of improvements to Bowman's property. Kunde agreed to make certain improvements to the property as part of the oral agreement that Kunde could exercise an option to purchase the Bowman land.

Kunde and Bowman entered into a written lease to rent the farm for the 2008 farm year. Kunde made a list of improvements he had discussed with Bowman, and at his request an addendum was added to the 2008

farm lease. The addendum stated that the improvements would be permissive and at renter's expense. The parties executed other leases in 2009, 2012, and 2013 under terms generally similar to those in the 2008 lease.

The leases were prepared by an attorney for Bowman. The leases contained provisions related to improvements by the lessee. Paragraph 4 provided that all commercial fertilizer and other inputs and expenses were to be paid 100% by the tenant. Paragraph 14 related to new improvements and provided that all buildings, fences, and improvements that may be erected by the tenant constitute additional rent and shall inure to the real estate and become property of the landlord and that expenses incurred without landlord consent were the responsibility of the tenant. Paragraph 21 provided that changes in lease terms could only be made in writing.

During the period of time when Kunde leased the Bowman property, he made substantial improvements to the land. He banked expensive fertilizer in the soil, excavated and leveled the property, installed drain tile, engaged in general cleanup, repaired and installed fences, and created and redirected waterways. Kunde's work also converted twenty-three acres of nontillable acres to tillable acres.

Kunde asserted that he incurred $52,000 in cost for his labor, equipment use, and materials in making the improvements. He claimed that when he discussed the improvements with Bowman, Bowman told him that Kunde could do whatever he wanted since the farm would be his. Kunde claimed he made the improvements in reliance on Bowman's promise that he would be able to buy the farm. Several witnesses at trial testified that improvements adding tillable acres to farm property would typically be the responsibility of the landlord.

In 2010, Kunde attempted to exercise his option to purchase the Bowman farm. Kunde was told by Bowman's daughter, Diane Engelkins, that she had discovered a third-party right of first refusal on the farm. After Kunde was told of the right of first refusal, Bowman told Kunde, "I feel like I lied to you."

In August 2013, Bowman was placed in a nursing home, suffering from dementia. Kunde was served with a notice of termination of the farm tenancy. In November, Engelkins informed Kunde that the farm was being placed for sale at a public auction due to the fact that it was Bowman's only asset and he needed it to be sold in order to meet Title XIX requirements. The farm was ultimately sold.

Kunde brought an action in district court against the defendants. He claimed that the defendants breached an option contract to sell him the agricultural land. Alternatively, Kunde alleged equitable causes of action, including promissory estoppel, unjust enrichment, and quantum meruit. The case proceeded to jury trial, with the jury rendering a verdict in favor of Kunde on his contract claim and awarding damages of $52,000.

After the verdict was rendered, the district court granted a motion for directed verdict on the grounds that there was insufficient evidence to prove the existence of a contract. The district court denied plaintiff's motion to reconsider, motion to amend and enlarge findings, and motion for a new trial on Kunde's equitable actions. Plaintiff appealed.

The court of appeals affirmed the ruling of the district court that Kunde failed to offer substantial evidence to support the jury's finding that Kunde and Bowman reached an agreement on all the essential terms of an option contract. The court of appeals, however, reversed the decision of the district court denying Kunde's request for a new trial on his equitable

claims. The court of appeals remanded the case to the district court for further proceedings on the equitable claims.

On remand, the defendants filed a motion for summary judgment on the remaining equitable claims. The district court granted the motion. Plaintiff again appealed.

The court of appeals affirmed the district court grant of summary judgment on the equitable claims of unjust enrichment and quantum meruit. The court of appeals reversed the district court grant of summary judgment on the promissory estoppel claim.

We granted further review.

**II. Standard of Review.**

The standard of review for district court rulings on summary judgment is for correction of errors of law. *Mason v. Vision Iowa Bd.*, 700 N.W.2d 349, 353 (Iowa 2005). Evidence is viewed in the light most favorable to the party opposing summary judgment. *Murtha v. Cahalan*, 745 N.W.2d 711, 713–14 (Iowa 2008).

**III. Discussion.**

**A. Introduction.** This appeal presents questions regarding the relationship between the equitable doctrines of unjust enrichment, quantum meruit, and promissory estoppel when there is a contract between the parties governing the same subject matter.

There are two distinct questions. The first question is whether the plaintiff may bring a claim for the cost of improvements to the property based on implied contract in the face of an express contract which allocated the cost of improvements. The second question is whether the plaintiff may seek to bring a claim of promissory estoppel under the facts and circumstances of this case.

**B. Quantum Meruit and Unjust Enrichment to Recover Uncompensated Costs of Improvements.** The first question we address is whether Kunde may bring claims for unjust enrichment or quantum meruit related to improvements made to the farmland when the parties entered into a contractual relationship specifically allocating the costs of improvements on the property. The district court concluded that in light of the existence of a contract covering the same subject matter, Kunde could not bring these equitable claims.

On appeal, Kunde concedes that an express contract and an implied contract cannot coexist with respect to the same subject matter. *Chariton Feed & Grain, Inc. v. Harder*, 369 N.W.2d 777, 791 (Iowa 1985). Kunde maintains, however, that there may be an implied contract on a point not covered by an express agreement so long as it is a point not "fully covered by an express contract and in direct conflict therewith." *Smith v. Stowell*, 256 Iowa 165, 174, 125 N.W.2d 795, 800 (1964). Kunde takes issue with the district court's conclusion that the subject matter was "Bowman's farm and the relationship, rights, and obligations that Kunde had with it." According to Kunde, because the farm leases do not obligate Kunde to make the improvements listed in the addendum, there is no express contract provision governing such improvements.

Bowman[1] agrees with the general principles outlined by Kunde, but disagrees with Kunde regarding their application in this case. Bowman focuses on the express terms of the written contracts between the parties. Bowman points out that the express agreements specifically allocated 100% of the input costs and expenses to Kunde. Further, Bowman notes that the leases specifically stated that any new improvements "erected or

---

[1]Estate of Arthur D. Bowman and Diane Engelkins will be collectively referred to as Bowman.

established upon the Real Estate during the term of the Lease" would be considered "additional rent and shall inure to the Real Estate, becoming the property" of Bowman. Further, Bowman observes, the lease provided that no expense could be incurred by or on account of Bowman without his written authorization. Because of these specific lease provisions, Bowman argues that the express terms of the farm leases prevent Kunde from recovering under the implied contract theories of quantum meruit and unjust enrichment.

We agree with Bowman. Kunde's unjust enrichment and quantum meruit claims focus on a right *to recover the cost of improvements*. The doctrines of unjust enrichment and quantum meruit are based upon the concept of implied contract. *Chariton Feed & Grain*, 369 N.W.2d at 791. We have held that "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter." *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (quoting *Chariton Feed & Grain*, 369 N.W.2d at 791). While it has been held that implied contract theories may coexist with written contracts, the cases involve situations where recovery was sought for matters not covered or agreed upon in the contract, *see Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 407 (Iowa Ct. App. 1994) (stating that a builder may recover for extras not covered by contract), or where a contract does not address a particular term that the facts and circumstances suggest should be supplied by implication, *see Carlson v. Maughmer*, 168 N.W.2d 802, 803 (Iowa 1969) (stating that, in employment contracts, reasonable compensation is implied when contract is silent on amount of compensation).

Here, the parties entered into an express written agreement related to the farmland improvements and allocated the costs of any improvements. The existence of an express contract on these matters

prevents Kunde from circumventing their agreement by seeking to use theories of unjust enrichment and quantum meruit to recover for improvements to which he was plainly not entitled under the terms of the contract. *Legg*, 873 N.W.2d at 771; *Chariton Feed & Grain*, 369 N.W.2d at 791. As a result, the district court did not err in granting summary judgment to Bowman on these claims.

**C. Promissory Estoppel to Enforce Promise of Option to Purchase Land.** We now consider whether the district court properly granted Bowman's motion for summary judgment on the promissory estoppel claim based on the alleged promise of Bowman to Kunde that he could purchase the land at his option. In order to consider whether Kunde could enforce the option promise on a promissory estoppel theory, we must first consider whether the claim may be brought in light of the existence of the farm leases or whether, like Kunde's claim for recovery based on unjust enrichment and quantum meruit, they are not available. If Kunde is allowed to press his option claim based on promissory estoppel, we must consider whether the district court correctly identified the elements of promissory estoppel as including a requirement of a "clear and definite oral agreement."

1. *Relationship of promissory estoppel to agricultural leases.* We first consider whether the existence of the farm leases prevents an assertion of promissory estoppel related to Kunde's asserted option to purchase the land. Bowman claims that the presence of the farm leases prevents the assertion of promissory estoppel just as it does the claims of unjust enrichment and quantum meruit. Kunde responds, however, that an option to purchase is often separate and distinct from a farm lease, that the farm lease does not contain an integration clause, and that the summary judgment record provided a triable claim on whether Kunde

reasonably relied upon the promise of an option by Bowman to make improvements on the farm at his own expense that were not recoverable from Bowman under the express terms of the lease agreement.

We agree with Kunde. The promissory estoppel claim is not based solely upon an implied contractual theory that the cost of the improvements should be borne by Bowman. Instead, the promissory estoppel theory in this case rests upon the notion that Kunde made the improvements on the land that were unrecoverable under the farm lease in reliance upon a promise of an option to purchase the land. *See* Restatement (Second) of Contracts § 90 cmt. *a*, at 242 (Am. Law Inst. 1981) [hereinafter Restatement (Second)] (emphasizing role of reliance in promissory estoppel). While Kunde's attempt to shift the costs of improvements to Bowman under his unjust enrichment and quantum meruit theories flies directly in the face of explicit contractual terms allocating the cost of improvements, the notion that Bowman promised Kunde an option to purchase the farmland that he improved is not necessarily inconsistent with the terms of the lease. *See Levien Leasing Co. v. Dickey Co.*, 380 N.W.2d 748, 752 (Iowa Ct. App. 1985) (finding that option to purchase is not necessarily inconsistent with written lease even though the written lease contained an integration clause when the evidence showed a practice of separating a lease from an option to purchase); *see also Walker v. Horine,* 695 S.W.2d 572, 577 (Tex. App. 1985) (per curiam) (holding that lease and option are separate agreements even though executed on same day because each agreement gives the parties separate benefits as well as separate obligations); *Bess v. Jensen,* 782 P.2d 542, 544–45 (Utah Ct. App. 1989) (holding that lease and option are separate agreements because executed in different documents and supported by different consideration); *Ledaura, LLC v. Gould,* 237 P.3d

914, 921–22 (Wash. Ct. App. 2010) (holding that lease and option are separate agreements even though executed on consecutive days by the same parties concerning the same property).  Further, we note that in this case, the farm leases did not contain an integration clause suggesting that the leases were designed to represent the sole expression of the parties' relationship.

In finding for Kunde on the promissory estoppel issue, we are not rewriting the contract.  We are not shifting the cost of improvements in light of express contractual agreements to the contrary.  Instead, we are simply holding that Kunde has raised a triable issue on the question of whether he made his improvements at his own expense in reliance upon the alleged promise of an option to purchase the land.

2. *Agreement vs. promise in promissory estoppel.*  Kunde argues that promissory estoppel does not require proof of a "clear and definite agreement."  Instead, Kunde argues that promissory estoppel may be established where a promisee reasonably relies upon a promise that does not necessarily contain all the elements of an enforceable contract.

In support of his argument, Kunde cites Restatement (Second) of Contracts, section 90, which provides,

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.

Restatement (Second) § 90(1), at 242.  According to Kunde, the language of section 90 emphasizes the presence of a "promise," not an "agreement."

Kunde recognizes that our Iowa caselaw sometimes suggests that the elements of promissory estoppel include a "clear and definite oral agreement."  *See, e.g., McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518,

532 (Iowa 2015). Kunde argues, however, that other Iowa cases more accurately state the elements of promissory estoppel as requiring a "promise" rather than an "agreement."

On the other hand, Bowman suggests that an "agreement" is required under our caselaw. Because the district court and the court of appeals had previously found that no enforceable contract existed with respect to the alleged option to purchase, Bowman reasons that promissory estoppel is not available to Kunde.

We begin our analysis with a brief survey of the Iowa caselaw. Our Iowa caselaw regarding promissory estoppel has evolved over time. In the early case of *Port Huron Machinery Co. v. Wohlers*, 207 Iowa 826, 221 N.W. 843 (1928), we embraced the concept of promissory estoppel advocated by Professor Williston in the context of a unilateral contract in which the acceptance arose not from verbal acts but from acts indicating acceptance. *Id.* at 829–30, 221 N.W. at 844–45. We had no occasion in *Port Huron*, however, to consider the contours or limits of the doctrine. *See id.*

The modern Iowa caselaw trail on promissory estoppel continued with *Miller v. Lawlor*, 245 Iowa 1144, 66 N.W.2d 267 (1954). In *Miller*, the plaintiffs alleged they built a house in reliance on a promise by a neighboring property owner that he would not build in a fashion to obstruct the plaintiffs' "terrific" nine-mile view from their home. *Id.* at 1146, 66 N.W.2d at 269. The question in *Miller* was whether the plaintiffs could enforce the assurance obtained from the neighbor. *See id.* at 1149–50, 66 N.W.2d at 271.

In considering the matter, we declared that promissory estoppel "is now a recognized species of consideration." *Id.* at 1152, 66 N.W.2d at 272 (quoting *Porter v. Comm'r*, 60 F.2d 673, 675 (2d Cir. 1932)). We cited in its entirety the Restatement (First) of Contracts section 90 for the

proposition that a promise is binding if the promisor should reasonably expect it to induce action or forbearance on the part of the promisee. *Id.* at 1153, 66 N.W.2d at 273. We emphasized that such a promise is binding even without consideration. *Id.*

In *Miller,* the defendant asserted that an element of promissory estoppel was a "clear and definite oral agreement." *Id.* at 1154, 66 N.W.2d at 273. Without expressly adopting this element, we concluded that the plaintiff offered evidence of "a clear and definite oral agreement" and was entitled to relief. *Id.* at 1153–56, 66 N.W.2d at 273–75.

We reviewed the elements of promissory estoppel in *Schoff v. Combined Insurance Co. of America,* 604 N.W.2d 43, 49 (Iowa 1999). From *Miller* and later cases, the *Schoff* court at first identified three elements of promissory estoppel as follows: "(1) a clear and definite oral agreement; (2) proof that plaintiff acted to his detriment in reliance thereon; and (3) a finding that the equities entitle the plaintiff to . . . relief." *Id.* at 48 (quoting *Johnson v. Pattison,* 185 N.W.2d 790, 795 (Iowa 1971)). But later, instead of those three elements, the *Schoff* court identified four elements:

> (1) a clear and definite promise; (2) the promise was made with the promisor's clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Id.* at 49. The difference between the earlier and later formulations of the elements of promissory estoppel in *Schoff* was two-fold. First, the later *Schoff* formulation changed the phrase "clear and definite agreement" in the first element of promissory estoppel to "clear and definite promise." *See id.* at 48–49. Second, the later *Schoff* approach broke down the reliance into two separate elements. *See id.*

These two changes in the later *Schoff* formulation were related. The emphasis in the later *Schoff* formulation shifted away from a narrow view of promissory estoppel as merely a substitute for consideration and toward a doctrine that emphasized reliance. *See id.* Both the change in the first element from "agreement" to "promise" and the breaking down of reliance into two separate elements—one focusing on the promisor and the other focusing on the promisee—reinforced promissory estoppel as a doctrine focused on protection of reliance-type interests.

The *Schoff* court's emphasis on a promise and reliance, rather than agreement and consideration, was repeated in *Kolkman v. Roth,* 656 N.W.2d 148, 156 (Iowa 2003). In *Kolkman,* we cited the later four-element test for promissory estoppel stated in *Schoff* requiring the presence of a "clear and definite promise" rather than a "clear and definite agreement." *Id.* We noted that "promissory estoppel is not only a substitute for consideration, but is also recognized as an exception to the statute of frauds even in cases where the promise may be supported by consideration." *Id.* at 153. We declared in *Kolkman* that the "strict proof" requirement in promissory estoppel cases is designed to ensure the presence of "a promise that justifies *reliance* by the promisee" and that "*reliance* inflicted injustice that requires enforcement of the promise." *Id.* at 156 (emphasis added). The method of analysis employed in *Schoff* and *Kolkman* thus moved away from using promissory estoppel as a doctrine to provide consideration in an otherwise enforceable agreement and toward protection of reliance interests that arise from clear and definite promises.

Yet, in *McKee,* we cited the early formulation in *Schoff* for the proposition that promissory estoppel required a party to prove "a clear and definite oral agreement." 864 N.W.2d at 532 (citing *Schoff,* 604 N.W.2d at

48).  In *McKee*, however, we rejected a promissory estoppel claim because the plaintiff had failed to show detrimental reliance.  *Id.*

The issue in this case is whether promissory estoppel requires the presence of a "clear and definite agreement" or whether it is sufficient for a party to present evidence of a "clear and definite promise" of the type that the promisor would understand would cause the promisee to rely upon.  We think it clear that a "clear and definite promise" is sufficient if the other elements of promissory estoppel are met.

First, we look to the language of Restatement (Second) of Contracts, section 90.  We regard the use of the term "promise" rather than "agreement" in the Restatement (Second) as a deliberate choice.  Our approach is supported by illustration 12 under section 90, which is strikingly similar to this case.  Under illustration 12,

> A promises to make a gift of a tract of land to B, his son-in-law.  B takes possession and lives on the land for 17 years, making valuable improvements.  A then dispossess B, and specific performance is denied because the proof of the terms of the promise is not sufficiently clear and definite.  B is entitled to a lien on the land for the value of the improvements, not exceeding their cost.

Restatement (Second) § 90 cmt. *d.*, illus. 12, at 246; *see Kaufman v. Miller*, 214 Ill. App. 213, 214, 217–18 (Ill. App. Ct. 1919).

Second, our approach is also consistent with our more recent caselaw such as *Schoff* and *Kolkman*.  As noted above, these cases emphasize the reliance element in promissory estoppel over the narrower function of merely filling the void of lack of consideration in otherwise enforceable agreements.

We do not think our citation in *McKee* undermines the thrust of our better reasoned cases.  *McKee* accurately cited language in *Schoff* which stated that a "clear and definite agreement" was an element of promissory

estoppel. But after citing our prior approach to promissory estoppel, the *Schoff* case emphasizes reliance and promise, not agreement. 604 N.W.2d at 48–49. After its initial citation of the elements of promissory estoppel from our prior cases, *Schoff* later declares that the first element of estoppel is one of "clear and definite promise." *Id.* at 49. When read in its entirety and in context, *Schoff* stands for a broader approach to promissory estoppel than the approach in *Miller*. In any event, in *McKee,* the promissory estoppel claim was rejected based on a failure to demonstrate reliance as a matter of fact. 864 N.W.2d at 532. The citation to prior law in *McKee* regarding the element of a "clear and definite agreement" was not essential to the holding of the case and has not impacted the march of our cases away from the requirement of an agreement and toward emphasis on reliance and promise.

Finally, our approach has support in cases from other jurisdictions which, though not binding, lend persuasive support to our approach. For example, in *Hoffman v. Red Owl Stores, Inc.*, the Wisconsin Supreme Court noted that while promissory estoppel originally was thought to apply only as a substitute for consideration in an otherwise enforceable contract, promissory estoppel under Restatement (First) section 90 is often appropriate when the parties have not mutually agreed on all the essential terms of a proposed transaction. 133 N.W.2d 267, 275 (Wis. 1965).

Similarly, in *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo. 1982) (en banc), the Colorado Supreme Court noted that the purpose of promissory estoppel was to allow recovery for "those who rely to their detriment upon promises which the promisor should have reasonably expected to induce such reliance." *Id.* at 905. The Colorado Supreme Court emphasized that the purpose of the promissory estoppel cause of action reflects "an attempt by the courts to keep remedies abreast

of increased moral consciousness of honesty and fair representations in all . . . dealings." *Id.* (quoting *Peoples Nat'l Bank of Little Rock v. Linebarger Constr. Co.*, 240 S.W.2d 12, 16 (Ark. 1951)). The Colorado Supreme Court concluded that in order to prevent such injustice, the Restatement section 90 "should be applied to prevent injustice where there has not been mutual agreement by the parties on all essential terms of a contract" but where "a promise was made which the promisor should reasonably have expected would induce action or forbearance, and the promise in fact induced such action or forbearance." *Id.*; *see, e.g.*, *Kiely v. St. Germain*, 670 P.2d 764, 767 (Colo. 1983) (en banc); *Bender v. Design Store Corp.*, 404 A.2d 194, 196–97 (D.C. 1979); *Rosnick v. Dinsmore*, 457 N.W.2d 793, 799–801 (Neb. 1990); *Neiss v. Ehlers*, 899 P.2d 700, 704–07 (Or. Ct. App. 1995); *Farm Crop Energy, Inc. v. Old Nat'l Bank of Wash.*, 750 P.2d 231, 240–41 (Wash. 1988) (en banc).

We recognize there are cases to the contrary. *See, e.g.*, *Keil v. Glacier Park, Inc.*, 614 P.2d 502, 506–07 (Mont. 1980); *Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 357 (N.D. 1986); *Weitzman v. Steinberg*, 638 S.W.2d 171, 176 (Tex. App. 1982). Nonetheless, we find the *Hoffman–Vigoda* line of cases is most consistent with the reasoning of Restatement (Second) section 90 and our evolving caselaw. We conclude that a "clear and definite promise" is sufficient to give rise to a promissory estoppel claim.

In applying the "clear and definite promise" element to the case at hand, we believe Kunde's claim survives summary judgment. Kunde has offered evidence that Bowman promised him an option to purchase the land at a price of $3000 per acre, that Bowman had reason to believe that Kunde would rely on the promise, and that Kunde, in fact, did rely on the promise to his detriment. The district court thus erred in granting the

defendants' motion for summary judgment on the promissory estoppel claim.

**IV. Conclusion.**

For the above reasons, the district court judgment granting summary judgment on Kunde's unjust enrichment and quantum meruit claims is affirmed. The district court judgment granting summary judgment on Kunde's promissory claim is reversed. We therefore vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand to the district court for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**