# IN THE COURT OF APPEALS OF IOWA

No. 20-1514
Filed March 30, 2022

**TAMERA ATWELL,**
        Plaintiff-Appellee,

**vs.**

**RONALD WILLIAM MEHRHOFF JR.,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wayne County, Patrick W. Greenwood, Judge.

The defendant appeals from the district court ruling that he was unjustly enriched and must pay the plaintiff $13,105.56. **REVERSED.**

Verle W. Norris, Corydon, for appellant.

Alan M. Wilson of Miles Law Firm, Corydon, for appellee.

Considered by Tabor, P.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**POTTERFIELD, Senior Judge.**

Ronald Mehrhoff Jr. appeals the district court ruling that he was unjustly enriched by payments his former romantic partner, Tamera Atwell, made toward a car loan in his name. The court ordered Mehrhoff to pay Atwell $13,105.56. Mehrhoff argues (1) Atwell should not be able to recover under the theory of unjust enrichment because there was an express agreement between the parties and (2) the twenty-seven payments Atwell made did not confer a benefit on him or, alternatively, that it was not unjust for him to retain the benefit of the payments.

## I. Background Facts and Proceedings.

Atwell and Mehrhoff were in a romantic relationship and living together in Mehrhoff's home when he decided Atwell needed a different vehicle. In September 2015, he located a 2014 Ford Taurus with the features he believed Atwell wanted. Mehrhoff suggested he would get Atwell a car for her birthday, and he surprised her with a trip to the car dealership to test drive the car. After driving it, they decided to buy the vehicle. Neither party believed Mehrhoff was gifting Atwell the car; he agreed to pay for the car insurance premiums and registration, which Atwell understood to be the gift. Mehrhoff did not limit the period of his obligation.

Atwell wanted the vehicle to be titled in her name since it was to be her car, but Mehrhoff reported the salesperson said the title and loan had to be in his name alone due to Atwell's credit score. While Atwell had some concern the vehicle would not officially belong to her,[1] she ultimately acquiesced and agreed to make

---

[1] Atwell testified:

> And I said, But the—the thing of it is, I said, you know you
> could take this car from me.

the payments on the car loan. Both parties planned to have the car titled in Atwell's name once the loan was paid off.

Atwell knew the entire purchase price of the vehicle was being financed ($26,000). She told Mehrhoff she did not want the payments to be more than $350 each month. Then, as Mehrhoff and the salesperson finalized the paperwork, Mehrhoff agreed—against Atwell's wishes—to add an extended warranty for $2495, life insurance for $1063.25,[2] and gap insurance for $795. With Mehrhoff's additions, the total amount to be financed was $32,402.95. The loan payment schedule consisted of seventy-five payments of $504.06 beginning October 2015.

Atwell was the primary driver of the vehicle. She made the monthly loan payments, and Mehrhoff continued to pay for car insurance and registration as promised. This continued even after Atwell and Mehrhoff separated in August 2016; Atwell took the Ford Taurus with her when she moved out, and she retained the car without issue for a while.

Then in 2017, Mehrhoff began contacting Atwell and pressing her to "get [a] loan in [her] name" so she could become the legal owner of the vehicle. Atwell maintained she was still unable due to her credit, but she told Mehrhoff she would continue making the monthly payments. In November, he asked her, "[W]hat are

---

And Ron told me over and over that that would never happen. He would never do that to me.

And I said, you know, but what if something would ever happen to you and I?

Which never expected that to ever happen, you know.

But, he says, Tami, I would never do that to you as long as you paid your payments.

[2] According to Atwell's testimony, because the car was titled in only Mehrhoff's name, the life and disability insurance only applied to him; there would be no benefit paid out if Atwell became disabled or died.

you thinking on timetable for getting car in your name and paying for license and insurance[?]" Then on January 23, 2018, Mehrhoff gave Atwell an ultimatum, telling her via text message, "Good afternoon just wanted to make sure you['re] understanding that I don't want the car and it will be going back if you haven't made arrangements to take over insurance and [registration] and get car put in your name before the end of this month." According to Atwell's testimony, Mehrhoff told her he spoke to the local sheriff and police officers and, if she was seen driving the vehicle, law enforcement would treat it as theft. He told her she could go to jail if she did not return the car to him because "it was his car and he wanted it back." Under these circumstances, Atwell agreed Mehrhoff could come retrieve the car, which he did in February.[3]

Atwell made all of the car payments from October 2015 through January 2018 except one,[4] which Mehrhoff made after Atwell was forced to miss some work due to a death in the family. In October 2018, several months after Mehrhoff took the vehicle, Atwell sent him a message via text, stating:

> Hi Ron. I was needing to know what you have decided to do about the money that I paid on my car that you took. As you know I paid 27 payments for a total of $13,609.62. I have talked to you about this before of some kind of reimbursement. I have not heard any more from you on that. I have visited with an attorney over this.

---

[3] After Mehrhoff took the vehicle, Atwell was without personal transportation for a while and had to rely on others for rides and vehicle-loans. At some point, a family member gave her a twenty-year-old van.

[4] By our count, Atwell made twenty-seven car payments: three in 2015, eleven in 2016 (the year her brother-in-law died), twelve in 2017, and one in 2018. Twenty-seven payments of $504.06 totals $13,609.62.

Presumably based on Atwell's pleadings, which stated—in contrast to her and Mehrhoff's testimony—that the last car payment she made was in December 2017, the district court concluded Atwell made only 26 payments, which explains its award of $13,105.56. Atwell did not cross-appeal, so the court's conclusion she made only twenty-six payments is not challenged on appeal.

He said that it would be best if we could come to some kind of agreement without going to court. If we would have to go to court, I will be asking for my attorney fees and court costs to be paid by you. I would appreciate it if you would let me know, so I know what direction to take this. Thank you[.]

Mehrhoff never responded.

Once he took possession of the car, Mehrhoff began making the loan payments. From February 2018 until June of 2020, Mehrhoff made payments until approximately $8500 was left due on the loan.[5] Then he traded in the vehicle and was given a trade-in value of $8500.

Atwell brought suit against Mehrhoff in July 2019, claiming he was unjustly enriched by the payments she made toward the car loan in his name. She alleged she made twenty-seven payments for a total of $13,609.62. The case proceeded to trial, which took place in August 2020—after Mehrhoff had traded in the vehicle.

In its written ruling, the district court found in favor of Atwell. The court concluded it could not "find the parties made an oral agreement, which was sufficiently definite to determine each party's duties, the conditions of performance, and a reasonably certain basis for a remedy." It continued:

> Although Tamera acquiesced in Ronald's purchase of the car from the dealership, there is no indication Tamera agreed the car should be titled in Ronald's name. Indeed, after the couple's relationship soured and while Tamera still had the car, she pressed Ronald to document her belief the car would belong to her if Ronald died. Ronald refused this request and insisted that Tamera take over the car's insurance and license payments and obtain financing to pay off his debt. Unable to do so, Tamera asked Ronald for reimbursement of the car payments she made. For approximately 17 months, the parties attempted to negotiate a resolution to their disagreement about the car. Such negotiation would have been unnecessary had either Tamera or Ronald believed they had an oral agreement with

---

[5] At trial, Mehrhoff estimated he paid approximately $14,600 during this time.

sufficiently definite terms for their duties and standards for performance and remedy should either fail in their obligations.

. . . .

Here, Ronald was enriched by Tamera's payment of a portion of his debt against the car. Ronald's enrichment came at Tamera's expense. Ronald's later explanation to Tamera that she was paying for his car demonstrated his appreciation that a benefit was conferred upon him. Ronald accepted and retained the benefit by using the car's trade-in value to purchase another vehicle. Tamera has no other remedy to recoup her payments other than by a suit for unjust enrichment. Equity and justice prohibit Ronald's retention of the benefit without reimbursement to Tamera

. . . Through no fault, mistake or wrongdoing on her part, Tamera paid $13,105.56 toward a debt Ronald was contractually obligated to pay. If in the end the car was worth less than the debt against it, this factor is attributable to the bad bargain struck by Ronald when he purchased the car from the dealership. Equity and justice will not permit Ronald to retain Tamera's payments toward his bad bargain

. . . .

Ronald expressed his intent to pay for the car's insurance and license costs. He never conditioned payment on Tamera's performance or forbearance of any action. Nor did Ronald restrict payment to a certain amount or duration. He paid no less than $3,944 to insure and license the car (while Tamera possessed it), and Tamera accepted Ronald's payments. Ronald clearly intended this expenditure as a gift to Tamera. The amount of the gift should not be factored into the judgment.

Mehrhoff was ordered to pay Atwell $13,105.56 and the costs of the action were assessed against him.

Mehrhoff filed a motion asking the court to reconsider. He urged that the court's finding there was not an express agreement between the parties as to the purchase and financing of the car was at odds with the evidentiary record. Alternatively, he argued that if there was not an agreement and he received a benefit from Atwell's payments, it was not unjust to let him retain that benefit; Atwell spent over $13,000 on the car payments, but she was also the primary driver of the car for more than two years—putting about 35,000 miles on it—during which

time Mehrhoff paid about $4000 for the registrations and car insurance. And there was no equity in the car when Mehrhoff took it from Atwell; it was worth substantially less than the loan balance.

The district court reiterated that there was no express agreement; Mehrhoff was benefitted when he "accepted and retained [Atwell's] payments toward his debt, which was less than it otherwise would have been at the time of the trade-in allowance"; and [i]t would be unjust to let [Mehrhoff] retain the benefit of [Atwell's] payments toward his debt while denying [Atwell] the car she intended and expected to own."

Mehrhoff appeals.

## II. Standard of Review.

Because "a claim for unjust enrichment is rooted solely in equitable principles, our review is de novo." *Iowa Waste Sys. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000). Reviewing de novo means "it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided [the] issue has been raised and error, if any, preserved in the trial proceedings." *Local Bd. of Health, Boone Cnty. v. Wood*, 243 N.W.2d 862, 864 (Iowa 1976).

## III. Discussion.

The doctrine of unjust enrichment is based on the concept of an implied contract. *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018) The term "contract" is somewhat of a misnomer, as the obligation of quasi contracts or implied-in-law contracts "is created by law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent."

*Iowa Waste Sys.*, 617 N.W.2d at 29 (quoting 1 Arthur Linton Corbin, *Corbin on Contracts* § 1.18, at 51 (rev. ed. 1993)); *see also id.* ("[I]t would be better not to use the word 'contract' at all."). Thus, "[u]njust enrichment . . . is not grounded in contract law but rather is a remedy of restitution." *Id.*

"A claim for unjust enrichment 'arises from the equitable principle that one shall not be permitted to unjustly enrich oneself by receiving property or benefits without making compensation therefor.'" *Leggs v. West Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (citation omitted). And, "[g]enerally[,] the existence of a contract precludes the application of the doctrine of unjust enrichment." *Johnson v. Dodgen*, 451 N.W.2d 168, 176 (Iowa 1990); *see also Kunde*, 920 N.W.2d at 807 ("The existence of an express contract on these matters prevents [the plaintiff] from circumventing their agreement by seeking to use [the theory] of unjust enrichment . . . to recover.").

Here, Mehrhoff challenges the district court's ruling, arguing there was an express agreement between him and Atwell so she is precluded from recovering under the theory of unjust enrichment.

As both parties testified, Mehrhoff was to purchase the vehicle in his name due to Atwell's credit score; he would pay for insurance and registration, and Atwell would make the monthly payments on the vehicle loan. The vehicle was Atwell's to drive, and the car would be titled in her name once the loan was discharged.

On cross-examination, Atwell testified:

> Q. . . . From the very beginning in September of 2015, you understood that you were going to be making all the payments on this car; correct? A. Yes.

Q. And you understood at the time that you went with Mr. Mehrhoff to purchase the car in September of 2015 that the total purchase price of the car was going to be financed; right? A. Yes.

Q. And—And [Mehrhoff] wanted you to make all the payments on the car, didn't he? A. Yes. And he was to—he was paying the insurance and tags on it.

Q. Wasn't—Wasn't that what the two of you had talked about? A. Yes.

Q. Wasn't—Wasn't that in fact what you agreed to? A. Yes.

Mehrhoff's testimony was consistent with Atwell's on these points; he stated:

I had found [the car]. And her car was needing, you know—it was basically a piece of junk. So we found this one. We looked at it and ended up buying it.

She wanted it put in her name or at least her name on, but the lending company would not do that. They said denied.

We decided that was okay. I would help her out, you know, get her going with it. I would pay the insurance and license and she would be making the payments and eventually the car was to be put in her name and take it over and it's your car.

Unlike the district court, we conclude Atwell and Mehrhoff entered into an express agreement about the purchase of the vehicle. *See Iowa Waste Sys.*, 617 N.W.2d at 29 ("When the parties manifest their agreement by words, the contract is said to be express." (citation omitted)). We recognize that Atwell wanted the car titled in her name. But even after Mehrhoff told her that was not possible, she agreed to the purchase of the car and said she would make all the monthly payments. And she acted accordingly—making all but one payment before Mehrhoff took the car from her.

"[A]n express contract and an implied contract cannot coexist with respect to the same subject matter."[6] *Kunde*, 920 N.W.2d at 807. Because an express

---

[6] We recognize "it has been held that implied contract theories may coexist with written contracts." *Kunde*, 920 N.W.2d at 807. But those "cases involve situations where recovery was sought for matters not covered or agreed upon in the contract." *Id.* Mehrhoff and Atwell's agreement was not detailed but, at a

agreement about the vehicle existed, we agree with Mehrhoff that the district court improperly applied the doctrine of unjust enrichment to this case. *See Johnson*, 451 N.W.2d at 176 ("[T]he existence of a[n express] contract precludes the application of the doctrine of unjust enrichment,"); s*ee also, e.g., Adams v. Long Branch Maint. Corp.*, No. 19-0335, 2020 WL 4814077, at *5 (Iowa Ct. App. Aug. 19, 2020) (finding the existence of an agreement dispositive on the appellant's unjust enrichment claim).

Atwell only pled her case under a theory of unjust enrichment, so we must reverse the district court's ruling in favor of Atwell.

**REVERSED.**

---

minimum, they agreed she would get to drive the vehicle and he would pay for registration and insurance. Mehrhoff acted in direct contravention of the agreement when he took the car from Atwell—preventing her from driving it—and refused to make further payments for insurance and registration. In other words, we cannot say Atwell seeks "recovery . . . for matters not covered or agreed upon in the contract." *Id.* And "[t]he existence of an express contract on these matters prevents" her from relying on the theory of unjust enrichment. *Id.*