**IN THE COURT OF APPEALS OF IOWA**

No. 23-1147
Filed July 24, 2024

**IN THE MATTER OF THE ESTATE OF RICHARD W. BELLUS, Deceased.**

**LENNY LEE COULTHER,**
    Appellant.
_____

Appeal from the Iowa District Court for Marshall County, John J. Haney, Judge.

Lenny Coulter appeals the district court ruling that denied his claims against the estate and the administrators of the estate of Richard Bellus. **AFFIRMED.**

Gail Boliver of Boliver Law Firm, Marshalltown, for appellant.

Joseph R. Cahill of Cahill Law Offices, Nevada, for appellee.

Heard by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Lenny Coulter appeals the district court ruling that held he could not maintain both a petition in probate and a claim in probate, that strict proof did not support his claim of promissory estoppel, that he failed to properly dismiss his claim for a right of first refusal, and that he did not name the proper defendants in his petition in probate. Because we determine that the issue of mutual exclusivity under Iowa Code section 633.415(2) (2022) and the issue of promissory estoppel are determinative, we do not address Coulter's claim regarding the court's refusal to allow Coulter to dismiss his right of first refusal claim or his claim related to the failure to amend his petition to name the proper defendants.

## I.  Background Facts and Prior Proceedings

Coulter worked for Richard Bellus (Bellus) on Bellus's Marshall County farm for over thirty years, beginning in the 1980s. Coulter assisted Bellus on that farm as well as on other farmland that Bellus rented. That assistance included managing livestock, planting, spraying, and harvesting. As Bellus aged, Coulter handled the bulk of the physical work on the farm, and Bellus provided financial support. Coulter also rented and farmed additional properties himself with Bellus's financial support. Bellus and Coulter also engaged in crop-sharing, wherein Bellus provided financing, Coulter provided labor, and they shared the profits.

In 2003, Coulter began living in a rental home owned by Bellus in Marshalltown. For the next seven years, Coulter lived rent-free in the home in exchange for repairs Coulter made to the home. In 2010, Coulter and Bellus began building an apartment above the garage on Bellus's farm property. Coulter lived in this apartment and continued to collect rent from the tenant that moved into the

Marshalltown rental home. During the construction of the apartment, Bellus suffered a fall and sustained injuries. After the fall, Coulter took on the majority of Bellus's physical duties on the farm. Around this time, a machine shop was also built on Bellus's farm property. This machine shop was largely used by Coulter, who paid no rent for the use of the shop.

Bellus passed away at age ninety-five on April 14, 2020. Bellus never married and had no children. He died intestate. A few days after his death, Bellus's sister found an unsigned will on Bellus's kitchen table. This unsigned will would have left Bellus's entire estate to Coulter. The will had been drafted by an attorney in Marshalltown, who Bellus's sister knew was not her brother's regular attorney. The drafting attorney revealed he never spoke with Bellus about the will; he had only spoken to Coulter. After Bellus's death, Coulter filed a petition in probate alleging Bellus had granted him a right of first refusal to purchase the farm in exchange for his years of work. Coulter asked Bellus's nephew if he could purchase or rent the farm shortly after the claim was filed.

Coulter then filed a petition in probate alleging he and Bellus had an oral contract in which Coulter would have a "right of first refusal" to purchase the farm. Coulter later amended this petition to add a breach of contract claim, asserting Bellus promised him the farm in exchange for his work over the years. Coulter amended his petition again to add a claim of promissory estoppel. A few months later, Coulter filed a claim in probate for the value of improvements he claimed he made to the farm in the amount of $627,071.74. The estate denied all claims and

asserted counterclaims of undue influence, tortious interference with inheritance, conversion, and dependent elder abuse.[1]

Following a four-day bench trial, the district court determined that Iowa Code section 633.415 prohibited Coulter from maintaining both a petition in probate and a claim in probate. The court determined that Coulter could not proceed with his claim in probate for the value of his enhancements to the property, which was filed after his petition in probate. As to his petition in probate, the court denied his claim of promissory estoppel, finding that Coulter failed to meet his burden of proof. The district court also concluded that Coulter did not properly move to dismiss his claim for a right of first refusal and failed to amend his petition in probate to name the proper defendants. Coulter appeals.

## II. Standard of Review

"Actions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity." Iowa Code § 633.33. Therefore, we review the promissory estoppel claim de novo, and the claim on mutual exclusivity for errors at law. Iowa R. App. P. 6.907.

## III. Analysis

Coulter challenges the district court determination that he could not maintain both his petition and his claim in probate under Iowa Code section 633.415(2); he did not establish the strict proof necessary to maintain his claim of promissory

---

[1] The court found the estate chose not to pursue its counterclaims, and no counterclaim is at issue on appeal.

estoppel; he failed to properly move to dismiss his claim for a right of first refusal; and he failed to amend his petition in probate to correctly name the defendants under Iowa Code section 633.415(2).

A. Petition in Probate and Claim in Probate

The district court found that under Iowa Code section 633.415(2), Coulter could not sustain both his petition and his claim in probate. Coulter first filed a petition for two counts of breach of contract, and he later added a third breach-of-contract claim and a claim of promissory estoppel. He later filed a claim in probate for the value he asserts he added to the property.

Iowa Code section 633.415(2) states: "A separate action based on a debt or other liability of the decedent may be commenced against a personal representative of the decedent in lieu of filing a claim in the estate." Coulter's petition was a separate action under section 633.415(2). Section 633.415(2) states that such an action may be commenced "in lieu of filing a claim in the estate." This language prohibits a party from bringing both a separate action and a claim in the estate. *Wolder v. Rahm*, 249 N.W.2d 630, 633 (Iowa 1977) ("[O]ur probate code establishes two alternative, mutually exclusive methods of enforcing claims against an estate."). This is because "'in lieu of' has been defined to mean 'instead of', 'in place of' and 'in substitution for'." *Id.*

Coulter argues that because he asserts separate claims—breach of contract in his petition and payment for the value of improvements in his claim— he may maintain both actions. But a claimant cannot "transform a single cause of action into separate causes by filing a claim in probate for part of his alleged damages and a separate petition at law for the remainder." *Id.* at 632. And here,

both of Coulter's claims arise from the same set of circumstances—the years spent working on Bellus's farming operation.

Coulter asserts there are two distinct causes of action, the first being the promissory estoppel claim "that he would receive the farm when Bellus passed away," and the other being "his claim against the estate for labor, materials, and improvements." Coulter argues "his claims arise from two separate instances." And he asserts *Youngblut v. Youngblut*, 945 N.W.2d 25 (2020) establishes "it would be against the reasoning of [section] 633.415 to confine a party to one claim if there were different causes of action." We disagree with this reading of *Youngblut.* In *Youngblut*, the court determined a party could not assert a claim for interference with inheritance if it was not brought in conjunction with a timely will contest. *See* 945 N.W.2d at 37. The court in *Youngblut* mentions Iowa Code section 633.415 only to note that one may "file a separate action outside probate court, but the same deadline applies." *Id.* at 35.

Coulter was required to assert all his claims arising from these circumstances in a single action. *See Wolder*, 249 N.W.2d at 632–33; Iowa Code § 633.415(2). Section 633.415(2) makes a separate action based on a "debt or other liability of the decedent," mutually exclusive from a claim in probate. *Wolder*, 249 N.W.2d at 632–33. And the Iowa Probate Code defines "debts" to include "liabilities of the decedent which survive, whether arising in *contract*, tort, or otherwise." Iowa Code § 633.3 (emphasis added). Because Coulter filed his petition in probate first, only that action can proceed. We affirm the district court on this issue.

B. Promissory Estoppel

Coulter asserts the district court wrongly denied his promissory-estoppel claim. He alleges Bellus promised to transfer the farm property to him and he made improvements to the property in reliance on that promise. The court found Coulter failed to provide strict proof of this claim.

Normally, the statute of frauds bars the admission of oral contracts transferring an interest in real estate, but promissory estoppel provides an exception to that rule. *Kolkman v. Roth*, 656 N.W.2d 148, 151–52 (Iowa 2003). Promissory estoppel "applies to circumvent the statute when necessary to prevent an injustice." *Id.* at 156. To prevail on a claim of promissory estoppel, a party must show by strict proof:

> (1) a clear and definite promise; (2) the promise was made with the promissor's clear understanding that the promisee was seeking assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his or her substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Id.* (citation omitted). Strict proof is necessary for each element, and "much more than mere nonperformance of a promise must be shown to obtain the benefits of promissory estoppel." *Id.* Further, "the burden of proof is on the plaintiff to prove an estoppel." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 50 (Iowa 1999). We focus on the first and third elements, a clear and definite promise and detrimental reliance.

As to the definite promise, the actual proof of any promise offered by Coulter was limited to his own testimony and an unsigned will. Coulter asserts Bellus promised him the farm, however:

> The doctrine of strict proof is especially applicable in a situation such as we have in this case, where the testimony of [defendant], because of the death of all other parties having knowledge of the facts, is incapable of contradiction. Where a witness testifies concerning a fact not capable of being denied because the lips of all persons who might deny the same are sealed in death, such testimony should be scrutinized jealously and weighed cautiously, and its credibility subjected to the most severe tests.

*First-Tr. Joint Stock Land Bank of Chicago, Ill. v. McNeff*, 264 N.W. 105, 108 (Iowa 1935).

As to the unsigned will, the drafting attorney never spoke with Bellus and was not his regular attorney. The drafting attorney communicated only with Coulter. The attorney that Bellus's family knew to be his regular attorney had advised him on numerous occasions that he needed a will, but he never acted on such advice.

Coulter also emphasizes the "father and son" relationship he had with Bellus and the perception that others believed the farm would be left to Coulter. But this does not equate to strict proof of a clear and definite promise. And the fact that Coulter first asserted a right of first refusal to purchase the farm and inquired into renting or buying the farm undermines his later testimony that Bellus promised the farm would be left to him. *See Kunde v. Est. of Bowman*, 920 N.W.2d 803, 808 (Iowa 2018) (suggesting inconsistent claims could undermine a promissory-estoppel claim). We conclude that Coulter did not meet his burden of proof concerning a clear and definite promise.

Although it is unnecessary given our determination on the clear-and-definite-promise element, we choose to also address Coulter's claim of the detrimental-reliance element. Coulter asserts he relied on the promise of the farm

in working for Bellus and making improvements to the property over the years. But he fails to show detrimental reliance and injustice by strict proof. A claim of promissory estoppel "requires strict proof that the reliance inflicted injustice that requires enforcement of the promise." *Kolkman*, 656 N.W.2d at 156. There is no question Coulter worked with Bellus over the course of three decades.

But there is also no question that Coulter received substantial benefits from Bellus. He was allowed to live rent-free on Bellus's property for over a decade and keep rental income, he was given the use of the machine shop rent-free, he used fuel purchased by Bellus for his own farming operations, and Bellus contributed to Coulter's equipment, seed, and fuel expense.[2] There is no detrimental reliance when Coulter received substantial benefits, and we find a lack of an injustice in light of the benefits received.

## IV. Conclusion

Coulter cannot maintain both his petition in probate and separate claim in probate as such are mutually exclusive under Iowa Code section 633.415(2). And Coulter failed to prove his claim of promissory estoppel by strict proof. Accordingly, we affirm.

**AFFIRMED.**

---

[2] The estate contends that Coulter received $904,478.89 of benefits from Bellus, which does not include any crop-sharing income.