# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3572

_____

Galtere, Inc.

*Plaintiff - Appellant*

v.

Harvest Capital Asset Management, LLC (Illinois); Harvest Capital Asset
Management, LLC (Iowa)

*Defendants - Appellees*

Scott Oakes

*Defendant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: December 17, 2025
Filed: April 1, 2026

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Galtere, Inc. ("Galtere") appeals two orders granting summary judgment to Harvest Capital Asset Management, LLC (Illinois) and Harvest Capital Asset Management, LLC (Iowa) (collectively, "Harvest Capital") in a contract dispute. Galtere alleged that Harvest Capital breached an express or implied contract between the parties and unjustly enriched itself under Iowa law by failing to repay $802,400.08 in purported loans it received from Galtere as part of a business venture. The district court[1] held that Harvest Capital had no obligation to repay those funds under the written contract that governed the venture. Accordingly, the district court granted summary judgment to Harvest Capital on Galtere's breach of contract, promissory estoppel, and unjust enrichment claims. We affirm.

## I.    Background

In 2007, Harvest Capital engaged Galtere, a commodities investment firm, in discussions over a possible investment in Two Rivers Farms, LLC ("TRF"), a Delaware company formed by Harvest Capital to purchase a majority stake in a Brazilian farming operation. Before the parties agreed on an investment structure, however, Galtere asserts that it agreed to loan Harvest Capital funds to pay expenses associated with operating the farm on the understanding that Harvest Capital would repay those funds when the farm became profitable and before any distributions were made to its owners.

In December 2007, Galtere made its first transfer of funds to Harvest Capital to cover expenses related to the parties' venture. Three months later, the parties executed a one-page, bullet-point agreement entitled "Galtere – Harvest Capital Transaction Summary" (the "Transaction Summary"). As relevant to this appeal, the parties agreed to the following:

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

> Galtere and Harvest Capital will create the Galtere Real Assets Fund [("GRAF")], and the [GRAF] Management Company ("the Management Company") as the vehicle for agricultural and timber real estate investments in Brazil and elsewhere . . .
>
> Galtere will fund an agreed upon [sic] monthly budget for [GRAF], this funding will be recovered, based on [sic] agreed upon schedule, when [GRAF] begins to generate fees [sic] Once [GRAF] is generating fees, all budgetary expenditures (salary, expenses, etc.) will be paid prior to distributions to owners . . .[2]
>
> Galtere agrees to utilize its resources and contacts to provide funding [sic] $3 million by April 15, 2008, to be directly or indirectly invested in [TRF]. An additional $3 million by May 15th and $6 million by July 15th for a total of $12 million will be secured on a best-efforts basis (including interim loan facilities as well as equity investments.).

Shortly thereafter, the parties formed GRAF but did not fund it. Instead, Galtere continued to make transfers to Harvest Capital totaling $802,400 throughout 2008 to cover farm-related expenses. Separately, Galtere, via an affiliate, invested approximately $15 million in TRF in the form of convertible debt.[3] In 2009, GRAF dissolved, having never received funding, generated fees, or made a distribution to its owners. Galtere remained invested in TRF, however, and the farming operation began to turn a profit in 2019. In 2020, Harvest Capital began taking management fees and paying distributions to TRF's owners and creditors. Nonetheless, Harvest Capital never repaid the $802,400 that it received from Galtere.

---

[2]Hereafter, we refer to this provision as the Repayment Provision.

[3]The parties agree that this case does not concern Galtere's convertible debt investment.

-3-

In June 2023, Galtere sued Harvest Capital in the district court to recover those funds under Iowa law. Specifically, Galtere alleged that Harvest Capital breached (1) the Repayment Provision, which states that Galtere's "funding" for GRAF's "monthly budget" would "be recovered" when "[GRAF] begins to generate fees," and (2) an oral contract to the same effect. Galtere also claimed it was entitled to recover the $802,400 on promissory estoppel and unjust enrichment grounds. Harvest Capital denied Galtere's allegations and asserted a counterclaim for abuse of process.[4] It then moved for summary judgment on Galtere's contract claims. Subsequently, both parties moved for summary judgment on Galtere's promissory estoppel and unjust enrichment claims.

Applying Iowa law, the district court granted summary judgment to Harvest Capital on each of Galtere's claims. First, the court concluded Galtere had failed to raise a material dispute over whether the Repayment Provision was triggered because GRAF never generated fees. Moreover, because there was "nothing ambiguous" about the Transaction Summary, which "clearly and expressly defined the structure formed for the investment as [GRAF]," the court rejected Galtere's extrinsic evidence suggesting the parties intended that Harvest Capital's obligations under the Repayment Provision would take effect when the venture, not merely GRAF, generated fees. Second, the court rejected Galtere's oral contract claim on the basis that Galtere failed to introduce sufficient evidence of such a contract into the summary judgment record. Lastly, the court held that Iowa law precluded Galtere's promissory estoppel and unjust enrichment claims because an express contract—here, the Transaction Summary—covered the promises and conduct giving rise to the claims.

Galtere appeals, arguing that the Transaction Summary was not the "final and complete expression of the [p]arties' agreement relating to Galtere's provision of the [l]oan" to Harvest Capital. Accordingly, Galtere contends that the district court erred at summary judgment in refusing to consider Galtere's extrinsic evidence of

---

[4]Harvest Capital's abuse of process claim is not at issue on appeal.

Harvest Capital's intended repayment obligations and in holding that the Transaction Summary foreclosed Galtere's promissory estoppel and unjust enrichment claims under Iowa law.

## II. Discussion

We review *de novo* the district court's grant of summary judgment to Harvest Capital, "view[ing] the evidence, as well as the inferences that may be reasonably drawn from the evidence, in the light most favorable" to Galtere. *See Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 710-11 (8th Cir. 2004). Having done so, we conclude the district court committed no error.

On appeal, Galtere does not dispute that the Transaction Summary, on its face, fails to support its breach of contract claim. The Repayment Provision conditions Galtere's recovery of funds on GRAF's generation of fees, which Galtere concedes never occurred. Instead, Galtere argues that the factual record establishes that the Transaction Summary was not "fully integrated," meaning the Repayment Provision was not the "final and complete expression of the [p]arties' agreement" concerning Harvest Capital's obligation to repay Galtere. Therefore, Galtere contends the district court should have taken account of evidence beyond the Transaction Summary—namely, prior promises by Harvest Capital to repay Galtere on different terms—that purportedly raise a genuine dispute as to whether Harvest Capital was obliged to repay the $802,400. If the Transaction Summary was fully integrated, Galtere concedes that no genuine dispute of fact exists as to Harvest Capital's obligations under it. *See Cannon v. Bodensteiner Implement Co.*, 903 N.W.2d 322, 329 (Iowa 2017) ("[I]n a fully integrated agreement, a party may not use extrinsic evidence, such as a prior oral agreement, solely to vary, add to, or subtract from the agreement." (citation modified)).

"Determining whether an agreement is fully integrated is a question of fact, to be determined from the totality of the evidence." *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011). Galtere has not offered sufficient factual

support for the proposition that the Transaction Summary was not the "final and complete expression of [its] agreement" with Harvest Capital. Galtere points to (1) deposition testimony by its 30(b)(6) representative that the company did not intend the Transaction Summary to set forth the final structure of its investment, (2) an affidavit by its President and Chief Operating Officer stating that Harvest Capital agreed in 2007 to repay any loans made by Galtere for farm-related expenses "once the Brazilian farm became profitable "and prior to any distributions" by [TRF] and Harvest Capital," and (3) the lack of an integration clause in the Transaction Summary. Even viewed in the light most favorable to Galtere, this evidence cannot bear the weight placed on it.

There is significant undisputed evidence indicating the Transaction Summary was fully integrated. The Transaction Summary was a "handcrafted" agreement between sophisticated parties, "not a form document using boilerplate language," executed after Galtere had begun sending Harvest Capital funds to cover farm-related expenses. *See Cagin v. McFarland Clinic, P.C.*, 456 F.3d 903, 908 (8th Cir. 2006) (applying Iowa contract law). In that context, the "terms of the alleged oral agreement" concerning Harvest Capital's repayment of those funds "reasonably would be expected to be included in the agreement." *Id.* (citation modified). Moreover, the Transaction Summary also set the terms of Galtere's equity investment in TRF, a strong indication that the parties viewed the Transaction Summary as a "final and complete expression" of the terms of their venture. Galtere acknowledged as much in its complaint, which alleges that Harvest Capital breached the Repayment Provision without reference to any extrinsic evidence concerning that provision's meaning. Set against these undisputed facts, Galtere's deposition testimony and its President's sworn statement concerning Galtere's intent prior to its execution of the Transaction Summary do not raise a material dispute on integration. The same is true of the Transaction Summary's lack of an integration clause. *See Cannon*, 903 N.W.2d at 329 (holding agreement was fully integrated despite lacking an integration clause after considering the totality of the evidence).

Because the district court did not err in finding the Transaction Summary was fully integrated, it committed no error in granting summary judgment to Harvest Capital on Galtere's breach of contract claim. For the same reason, we find no error in its grant of summary judgment to Harvest Capital on Galtere's implied contract theories of unjust enrichment and promissory estoppel. *See Chariton Feed & Grain v. Harder,* 369 N.W.2d 777, 791 (Iowa 1985) ("An express contract and an implied contract cannot coexist with respect to the same subject matter, and the former supersedes the latter."); *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 808-09 (Iowa 2018) (noting plaintiff could not bring a promissory estoppel claim to enforce promise that is inconsistent with term of a fully integrated contract).

## III.  Conclusion

Accordingly, we affirm the judgment of the district court.

_____