NEPSTAD CUSTOM HOMES
CO., Appellant,

v.

Curtis J. KRULL, Chris A. Krull, and First
Interstate Bank, Des Moines, N.A., n/k/a
Boatmen's Bank, Appellees.

No. 93–266.

Court of Appeals of Iowa.

Nov. 28, 1994.

Steven C. Reed of Reed, Blazek & Lynch, West Des Moines, for appellant.

Nicholas Critelli and Curtis Krull of Nicholas Critelli Associates, P.C., Des Moines, for appellees.

Considered by DONIELSON, C.J., and HAYDEN and HUITINK, JJ.

HUITINK, Judge.

Nepstad Custom Homes Company brought this mechanic's lien foreclosure action against Curtis and Chris Krull for amounts due for

the construction of a home. First Interstate Bank provided the financing and now holds a mortgage on the home. The defendants counterclaimed for fraudulent misrepresentation and breach of contract, eventually dismissing the misrepresentation claim. The matter proceeded to a bench trial.

The Krulls entered into a contract with Nepstad for the construction of a home in West Des Moines. At the time the parties entered into the contract, Nepstad and its president, Gregory Nepstad, utilized Curtis Krull for legal representation. Curtis Krull represented Nepstad in a separate mechanic's lien foreclosure action and Gregory Nepstad in a dissolution action.

Prior to signing the contract, Nepstad provided the Krulls with a budget sheet and description of materials. The parties eventually agreed upon a price of $190,000 and this was the figure First Interstate utilized to set the construction loan amount.

Nepstad began construction of the house in August 1990. However, a dispute arose over the proper elevation of the foundation. After Nepstad built the foundation and began framing the home, the Krulls insisted that the foundation be lowered in order to reduce the slope of the driveway and front yard. This necessitated tearing out the old foundation and the framing which had been done. Nepstad then built the foundation as the Krulls requested.

On December 4, 1990, the parties entered into a contract for the apportionment of the costs associated with redoing the foundation. The second budget sheet reflected a new price of $195,045.50. Nepstad claims both it and the Krulls agreed to contribute $5,000. The Krulls claim Nepstad agreed to contribute $5,000 and cover the remainder of the replacement costs by reducing its profit.

After the completion of the second foundation, more disputes arose between the parties. Before the framing was completed, the Krulls fired one carpenter for being too slow. The Krulls also claim they were unable to contact Gregory Nepstad during construction. Eventually construction was sufficiently completed to allow the Krulls to move into the home. The Krulls claim that at the time they moved in the home was eighty to eighty-two percent complete. Nepstad claims the home was ninety-five percent complete.

The Krulls then learned the cost of the home had gone over the second budget price of $195,045.50. A dispute arose concerning who should be responsible for the cost overruns. The Krulls refused to make final payments to Nepstad, and Nepstad refused to complete the home until payment was made. The Krulls finished the construction themselves.

Nepstad then filed a mechanics lien and a subsequent foreclosure action against the Krulls. Nepstad also claimed First Interstate's mortgage was junior to its lien interest. The defendants filed a counterclaim asserting breach of contract based on defects in the construction of the house. They claimed Nepstad failed to perform in a reasonably good and workmanlike manner. Several of the subcontractors also filed mechanic's lien foreclosures. The Krulls settled with these subcontractors prior to trial.

The trial court dismissed Nepstad's petition for foreclosure. Nepstad claimed the parties had entered into a cost-plus contract, which is a contract for the cost of the materials and labor plus a given percentage, here five percent. The court determined that Nepstad and the Krulls had entered into a fixed-price contract and not a cost-plus contract. The court held for the Krulls on their claim of breach of contract due to defects in construction. Nepstad was ordered to pay the cost overruns during construction, which were $12,645.59. It was also ordered to pay the costs of repairing defects in the home, which were $6,535. Thus, in total the Krulls were awarded damages of $19,180.59. Nepstad appeals.

**I.** An action to enforce a mechanic's lien is in equity. *Sulzberger Excavating, Inc. v. Glass*, 351 N.W.2d 188, 191 (Iowa App.1984). Consequently, review is de novo. Iowa R.App.P. 4. In mechanic's lien cases, involving as they do numerous charges and counter charges which depend entirely on the credibility of the parties, we have frequently held the trial court is in a more advantageous position than we to put credence where it

belongs. *McDonald v. Welch,* 176 N.W.2d 846, 849 (Iowa 1970).

We note that in *Sulzberger,* the defendant raised a counterclaim based on failure to perform work in a workmanlike manner, which is similar to the counterclaim raised in the present case. *Sulzberger,* 351 N.W.2d at 191. We there reviewed the entire case de novo on appeal. *Id.* However, in another mechanic's lien case, *Moore's Builder & Contractor, Inc. v. Hoffman,* a counterclaim of breach of warranty was separately tried as a law action by the trial court, and our review of the counterclaim was on assigned error of law. *Moore's Builder,* 409 N.W.2d 191, 194 (Iowa App.1987).

Our scope of review is determined by the nature of the trial proceedings. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 862 (Iowa 1991). Here, all issues were tried together before the court. We conclude the entire case was tried in equity and our review of this action, including the issues on the counterclaim, should be reviewed de novo.

**II.** Nepstad contends the construction contract for building the house was a cost-plus contract, not a fixed-price contract. As part of this argument, it claims the contract should be interpreted so that any dispute should be resolved in its favor because there was a confidential and fiduciary relationship between Curtis Krull and Nepstad Custom Homes. Curtis Krull is an attorney. At the time the present contract was entered into, Curtis Krull was representing plaintiff in another action and was representing Gregory Nepstad personally.

Nepstad admits the district court did not address this issue. Issues must ordinarily be presented to and passed upon by the trial court before they can be raised and decided on appeal. *Johnston Equip. Corp. v. Industrial Indemnity,* 489 N.W.2d 13, 16 (Iowa 1992) (*citing State Farm Mut. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 207 (Iowa 1984)). A rule 179(b) motion to enlarge or amend is necessary for preservation of error when a trial court fails to resolve a matter properly submitted. *Id.* at 17. Nepstad did not file a rule 179(b) motion seeking to obtain a ruling

from the district court on its claim of a confidential and fiduciary relationship. We conclude Nepstad has failed to preserve error. Failure to preserve error bars our review on appeal. *Harper v. State,* 397 N.W.2d 740, 743 (Iowa 1986).

**III.** Nepstad claims that even if there was no confidential and fiduciary relationship between the parties, the district court failed to properly construe the contract entered into on August 14, 1990. It believes the contract was clearly a cost-plus contract. It points out that it had built a previous home for the Krulls using a cost-plus contract and an identical contract form had been used in this case.

When construing a written contract, we are guided by the rule that the intent of the parties controls and, except in cases of ambiguity, intent is determined by what the contract itself says. *Anderson v. Aspelmeier, Fisch, Power, Warner & Engberg,* 461 N.W.2d 598, 600 (Iowa 1990). Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper. *Iowa Fuel,* 471 N.W.2d at 863. The test for ambiguity is an objective one: Is the language fairly susceptible to two interpretations? *Id.* (*citing Central Bearings Co. v. Wolverine Insurance Co.,* 179 N.W.2d 443, 445 (Iowa 1970)).

Here, the contract between the parties consisted of three different documents—a budget sheet, a description of materials, and a one-page contract. The documents used both the terms "budget" and "costs of construction." The district court determined the contract was ambiguous as written, and we agree.

We find the district court properly allowed the parties to present extrinsic evidence. This evidence showed the Krulls were attempting to construct a less expensive home than the one they had previously owned. They worked with Nepstad to design a house that would fit their needs and still come within their budget. Nepstad obtained specific subcontractor bids in order to calculate the budget sheet. The amount on the budget

sheet was the same amount which was borrowed by the Krulls. The second agreement, entered into on December 4, 1990, recognizes that the added costs of the new foundation will cause the cost of the house to exceed the budget sheet. Also, a representative of First Interstate testified the Bank considered the contract to be a fixed-price contract. Based on these facts, in our de novo review, we conclude the contract was a fixed-price contract. Nepstad presented no evidence to show the Krulls agreed to pay any amount over the amount shown on the budget sheet.

**IV.** Nepstad contends the December 4, 1990, agreement should be interpreted against the Krulls because Curtis Krull drew up the agreement. The December 4, 1990, contract was a memorialization of the parties' resolution of the question of who should pay for the cost of tearing out the old foundation and constructing a new foundation. Nepstad claims it and the Krulls each agreed to contribute $5,000 towards these costs. The Krulls claim Nepstad agreed to pay $5,000 at that time and to cover the remainder of the costs with its expected profit on the construction of the house.

On appeal from a judgment at equity, we are not bound by the trial court's findings; however, the trial court's assessment of credibility of witnesses carries considerable weight. *Graham v. Henry,* 456 N.W.2d 364, 365 (Iowa 1990). Here, the factfinder did not believe Nepstad's representations as to the meaning of the December 4, 1990, agreement. We agree with the district court's conclusion on this issue.

**V.** Nepstad claims it is entitled to foreclosure of its mechanic's lien because it substantially performed under the terms of the contract. In support of this argument it states that the house was ninety-five percent completed in April 1991, when the Krulls refused to make any further payments. A representative of the Bank testified the house was ninety-two percent completed when the Krulls moved in.

When a contractor has substantially complied with a contract it is entitled to recover the contract price with deductions for any defects or incompletions. *S. Hanson*

*Lumber Co. v. DeMoss,* 253 Iowa 204, 208, 111 N.W.2d 681, 684 (1961). The contractor has the burden of proof to show substantial performance with the contract. *Farrington v. Freeman,* 251 Iowa 18, 23, 99 N.W.2d 388, 391 (1959). Substantial performance allows only omissions or deviations from the contract that are inadvertent or unintentional, not the result of bad faith, do not impair the structure as a whole, are remedial without doing material damages to the other portions of the building, and may be compensated for through deductions in the contract price. *Moore's Builder,* 409 N.W.2d at 193.

Once a contractor has met its burden to show substantial performance, the homeowner has the burden to show any defects or incompletions which may be deducted from the contract price. *Id.* Nepstad contends the Krulls failed to meet their burden to show any defects or incompletions.

The district court found Nepstad failed to meet its burden to show substantial performance with the contract. The question is not whether the house was substantially completed when the Krulls moved in, but whether the omissions or deviations from the contract were inadvertent or unintentional. Gregory Nepstad testified that he did not agree with the Krulls' decision to tear out the first foundation and he lost interest in the project thereafter. There was evidence to show Nepstad did not supervise the various subcontractors, and some subcontractors reported directly to the Krulls. In our de novo review, we conclude the evidence shows Nepstad did not substantially perform its duties as the general contractor. Therefore, Nepstad is not entitled to enforcement of its mechanic's lien.

**VI.** Nepstad contends the Krulls' counterclaim for damages should have been dismissed. It disputes the Krulls' claim there were defects in the construction in the house. Nepstad asserts that it constructed the house in accordance with the contract. It states that the Krulls later sought some additions to the original blueprint, and Nepstad's failure to provide these items for the original price was considered a defect or omission by the Krulls.

A builder may recover from an owner for extras ordered or agreed upon which were not covered by the contract. *S. Hanson Lumber,* 253 Iowa at 208, 111 N.W.2d at 684. By the same token, an owner is entitled to offsets for defects in the work of the builder and omissions to supply items which were part of the contract. *Id.* at 210, 111 N.W.2d at 686.

Here, the Krulls admit they requested extras worth $2,879. However, the blueprints show the other items Nepstad claimed were extras were actually agreed to prior to the execution of the contract. Therefore, the Krulls are entitled to an offset due to Nepstad's failure to supply these items which were part of the contract. The Krulls are also entitled to damages to repair defects in the construction of the house. Our review of the evidence supports the district court's award of damages to the Krulls on their counterclaim, and we affirm.

**VII.** Nepstad argues it should have been awarded attorney fees under Iowa Code section 572.32. Because we have found Nepstad was not entitled to enforce its mechanic's lien, we find it is not entitled to trial attorney fees.

**VIII.** Nepstad also seeks attorney fees for this appeal. Section 572.32 permits an award of attorney fees to a plaintiff who successfully enforces its mechanic's lien. We have found Nepstad is not entitled to enforce its mechanic's lien, and therefore, it is not entitled to an award of attorney fees.

We affirm the decision of the district court on all issues presented in the appeal. Costs of this appeal are assessed to Nepstad Custom Homes Company.

**AFFIRMED.**