# IN THE COURT OF APPEALS OF IOWA

No. 17-1260
Filed October 24, 2018

**AQUA PALACE, LLC, an Iowa Limited Liability Company, d/b/a AQUA PALACE SPA & POOL,**
    Plaintiff-Appellee,

**vs.**

**ROB and LISA JOHNSON,**
    Defendants-Appellants.

_____

Appeal from the Iowa District Court for Pottawattamie County, Kathleen A. Kilnoski, Judge.

Defendants appeal from the district court's ruling on the plaintiff's breach-of-contract action. **AFFIRMED AND REMANDED.**

Mark J. Rater of Rater Law Office, Council Bluffs, for appellants.

Keith A. Harvat of Houghton Bradford Whitted PC, LLO, Omaha, Nebraska, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Rob and Lisa Johnson contracted with Aqua Palace, LLC to design and install a custom swimming pool in connection with a large-scale renovation of their home in Omaha, Nebraska. The project was plagued by delays, changes, and cost overruns. Eventually, the Johnsons stopped making payments to Aqua Palace and terminated the contract.

Aqua Palace sued the Johnsons for breach of contract. Following trial, the district court entered a $92,439.66 judgment in favor of Aqua Palace and ordered the Johnsons to pay Aqua Palace's attorney fees of $54,143.89.

On appeal, the Johnsons challenge (1) Aqua Palace's entitlement to charges included in a running change order; (2) amounts they characterize as an illegal penalty; (3) an $18,000 charge they view as a "duplicate bill"; (4) the amount of sales taxes; (5) Aqua Palace's failure to treat a $5000 "design fee" as a deposit; (6) the amount of the attorney-fee award; and (7) the computation of interest.

## I.    Change Orders

Under the contract, any changes were to be in writing. Pursuant to this provision, the Johnsons signed several change orders for specific items. The Johnsons do not take issue with the charges in these change orders. They challenge a "running change order," given to them several months into the project and listing additional charges for a variety of items. They assert, "Aqua Palace had a duty to notify [them] they were being charged extra over and above the contract and agreed upon change orders on the day in question or very soon thereafter," so they could "make changes to the project or . . . elect cost saving

measures." In their view, "The running change order was never signed by [them]" and "was never a valid contract between the parties."

The district court was not persuaded by this argument. The court cited "the contract," which "explicitly stated that additions to the contract were due when they were invoiced." The court further stated: "Whether or not the parties had written change orders, running change orders, or no change orders, the written contract was clear that once the 'extras' were ordered and installed, the amount invoiced was due." The district court determined the contract authorized the invoicing of work requested by the Johnsons "with or without a written change order."

The district court's reading of the contract was not erroneous. *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010) (setting forth standard of review); *see also In re Estate of Woodroffe*, 742 N.W.2d 94, 106 (Iowa 2007) ("The intent of the parties is controlling, and intent is to be determined from the language of the contract, when possible."). The contract obligated the Johnsons to pay for the items included in the running change order whether or not the order was signed or given to them on or before the charges were incurred.

The contract expressly stated invoices would satisfy the change-order requirement. The pertinent language was as follows: "Extras constructed or installed by the Contractor at the request of the Owner with or without a written change order, shall be deemed additions to this contract, and once ordered or installed an invoice for the order shall be given satisfying the written change requirement and billed accordingly." The contract additionally stated, "Extras, including Electrical, Plumbing w/ required permits are in addition to the contract

price and shall be paid as billed. Progress payments and payments for extras are due as requested and/or billed." And, the contract stated:

> If the Owner request changes or modifications in the pool plan requiring additional expenses or charges to the Contractor, the Owner shall pay the Contractor the amount invoiced for these extras upon being invoiced or upon installation, which ever shall be requested. The cost of all extras, if any, shall be in addition to the contract price.

The question becomes whether the Johnsons requested the changes contained in the running change order. *See Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 407 (Iowa Ct. App. 1994) ("A builder may recover from an owner for extras ordered or agreed upon which were not covered by the contract."); *Palmer v. Glasbrenner*, No. 03-0492, 2004 WL 1159736, at *3 (Iowa Ct. App. May 26, 2004) ("A contractor may recover for extra work only if it was performed with the knowledge or consent of the adverse party."). The district court found, "[T]he extra work performed by Aqua Palace after the written contract was executed was done at Johnsons' request." The court gave little weight to Lisa Johnson's testimony that she had "no idea there was a running change order." The court stated, "While Johnsons were disgruntled about Aqua Palace's timing in providing the written invoices or change orders, they presented no evidence that the materials they ordered were not supplied or that the work by Aqua Palace was not done at their request." Substantial evidence supports the court's finding. *See NevadaCare, Inc.*, 783 N.W.2d at 465 (reviewing fact findings for substantial evidence).

The Johnsons began making changes to the original plan almost immediately after the contract was executed. Aqua Palace's co-owner, Scott

Rolenc, recalled that, as of the first day on the job, "the whole scope . . . changed." The Johnsons expanded the project to include a "retaining wall . . . and pavers." The change required Aqua Palace to "[s]upply 40 ton of selected gray natural limestone blend . . . and [i]nstall a 3-tiered design retaining wall, with excavation work, and selective backfill material." The company was forced to "re-change [its] excavation position." The Johnsons also "[i]ncrease[d] [the] patio area around [the] spa, including adding [a] concrete base." They added three "staircases of solid stone," "a custom spa," barbecue walls, and a "[j]et system" for the pool. In light of the changes, the Johnsons' architect insisted on adding drain lines behind the retaining walls. Rolenc testified he "talked about the additional charges" with the Johnsons. The Johnsons concededly approved these modifications in writing.

Many of the modifications included in the running change order flowed from these approved modifications or were necessary to comply with instructions from the general contractor or architect. For example, the general contractor limited access to the pool area, forcing Aqua Palace to incur costs for the rental of a truck to run concrete to the upper deck. Planned landscaping was also altered, requiring the installation of additional drain lines and an increased number of pavers. In sum, the district court as fact finder reasonably found that the Johnsons authorized the substantive work billed in the running change order.

The changes, combined with required coordination among the various home-renovation projects, resulted in delays. The running change order included charges for the delays. The district court approved these charges after finding "the delays were caused by Johnsons or their agents." Substantial evidence supports the finding.

Lisa Johnson agreed "communication" on the projects "was poor." Although she laid the blame for the lack of coordination at Aqua Palace's feet, many of the delays were occasioned by the contractor, subcontractors, or architect the Johnsons hired. For example, Aqua Palace workers had to wait for painters to finish their work on a garage and were forced to repair a sand bed that was damaged in the process. Rolenc testified, "When that contractor now interferes with us doing our job that we were scheduled to do, that is when a time change order comes about."

Significantly, the contract between the Johnsons and Aqua Palace authorized Aqua Palace to charge for delays attributable to the general contractor or owner. It stated Aqua Palace "shall be compensated for at least that day's total expenses, including but not limited to delivered concrete, machine rental, subcontractors and employee wages, travel expenses for the entire day." The contract further stated, "Any expenses incurred in rescheduling shall be considered a billable change order." In short, the Johnsons were on notice of their obligation to cover the cost of delays.

As noted, the approved modifications required significant alterations in the plumbing scheme. The Johnsons contend Aqua Palace should not have included in the running change order an $8226 charge "for meeting with the inspector, passing the inspection, and installing the new drain." In their view, Aqua Palace, as "the pool expert," was contractually obligated to complete the contract satisfactorily.

The district court found "no dispute that Johnsons' agents changed the original drainage and plumbing designs advocated by Rolenc." The court further

found, "The pool passed the plumbing inspection for which Aqua Palace was responsible."  Substantial evidence supports the findings that the changes to the drainage system were made at the behest of the Johnsons, and Aqua Palace implemented the changes satisfactorily.  We conclude the district court did not err in obligating the Johnsons to pay the additional plumbing charges included in the running change order, including the charges associated with an inspection.

## II.      *Illegal Penalty*

The district court awarded Aqua Palace $19,020.00 in "forfeited discounts."  The contract authorized forfeiture of discounts as follows:

> Progress payments and payments for extras are due as requested and/or billed, and if not paid within 10 days from their due date, discounts amounting to $11,800 shall be forfeited on all of the contracted products/labor and a late fee/interest equal to 1.5% (18% annual) or the highest allowable by law of the outstanding balance compounded per month shall be added until paid, including any court ordered judgments.  Any utilization of the pool by the owner before full payments are received will be conceived as a satisfactory acceptance of the completed project, and full payment will be due
> . . . .

The contract also allowed Aqua Palace to retain "all amounts paid . . . as damages" in the event of a default or breach and "seek other remedies to recover the unpaid balance of the contract price, including extras."  And, as noted, the contract authorized compensation for delays.

The Johnsons contend that, "taken together," these provisions constituted an illegal penalty.  They rely on *Rohlin Construction Co. v. City of Hinton*, 476 N.W.2d 78, 81 (Iowa 1991), which determined a "$400-per-day liquidated damage clause [for untimely completion of a road project] is an unrealistic amount and is

therefore a penalty that should not be enforced." They also imply the $19,020 figure was not supported by the evidence.

We begin with the factual record. Aqua Palace documented the $19,020 "forfeited-discount" element of damages in its final invoice. First, the company removed the $11,800 discount for timely payment set forth in the contract. Second, Aqua Palace removed a $20-per-hour discount on labor performed in connection with items in the running change order. The labor discount totaled $7220, resulting in a forfeited discount of $19,020. This sum did not include retained payments or compensation for delays, as the Johnsons suggest. To the contrary, Aqua Palace credited the Johnsons for the payments they made on the contract and separately charged them for delays as allowed by the contract. The forfeited-discount element of damages was supported by substantial evidence.

We turn to the question of whether the amount constituted an illegal penalty. In *Rohlin*, the contract provided for the automatic accrual of $400 in damages per day, irrespective of actual losses. 476 N.W.2d at 81. The forfeited-discount provision, in contrast, simply removed a discount inuring to the Johnsons' benefit if they made timely payments. Although the difference between a penalty for late payment and a forfeited discount for late payment may be one of semantics,[1] the Johnsons present no argument that a fee for untimely payment of sums due under the contract is, by itself, illegal. We discern no error in the district court's award of $19,020 in forfeited discounts.

---

[1] *See Jones v. Kan. Gas & Elec. Co*, 565 P.2d 597, 601–02 (Kan. 1977) (summarizing expert's discussion of the terms).

### III.    *Duplicate Bill*

The Johnsons challenge a change order in the amount of $18,000.  They assert it was a duplicate bill.

The record on this issue is as follows.  Aqua Palace stated the $18,000 charge was for the creation of "a masonry 20-inch tall wall incorporating the auto cover into the design on 2 sides."  This item was included in a "necessary options" provision of "the original pool contract."  As discussed, the Johnsons changed the design to incorporate a three-tiered wall.  They were charged $53,500 for the revised specification.  They assert construction of the twenty-inch masonry wall was encompassed in the $53,500 charge.

Their argument is appealing at first blush.  But Rolenc explained the $18,000 charge was for a stone veneer face on certain walls and the charge was not encompassed in the $53,500 charge.  He testified that he continually had "to redesign this thing to accommodate more and more things. . . ."

The district court accepted Rolenc's testimony over the Johnsons' evidence on this point.  That was its prerogative as fact-finder.  *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996) ("The trier of fact—here, the district court—has the prerogative to determine which evidence is entitled to belief.").  Finding substantial evidence to support the $18,000 charge, we affirm the inclusion of this charge in the damage award.

### IV.    *Sales Tax*

The Johnsons contend the district court erred in assessing sales taxes for the project.  They note that the contract did not speak to the issue of sales taxes and none of the invoices preceding the final bill included sales taxes.

The district court found as follows:

> At trial, Johnsons urged that Aqua Palace improperly charged them Nebraska sales tax. As set out above, Johnsons provided no expert testimony regarding Nebraska sales tax. The parties' communications showed that Aqua Palace would calculate sales tax at "around 3% of the total project" once it determined the final project cost. The court finds that Aqua Palace prevailed on the issue of sales tax.

The court's finding is supported by substantial evidence. Months before the final bill was sent, the Johnsons were on notice that sales taxes would be imposed. Specifically, Rolenc informed them:

> Until complete I do not have a final sales tax figure, but it should be around 11k. We only collect on materials at a reduced overall tax rate. We didn't collect sales tax on the BBQ for this reason, for we will include it in the final project cost. Usually taxes are around 3% of the total project.[2]

The final sales tax came in at $6724.16, well under Rolenc's estimate. Rolenc testified, "The taxes on any construction project is always figured at the end of the project." On this record, we discern no error in the district court's inclusion of sales taxes in the final judgment against the Johnsons.

## V.   *Design Fee*

The Johnsons paid a $5000 "pool design fee" before the project was started. They argue Aqua Palace should have credited this amount against the total cost of the pool project.

The district court found:

> Rolenc sketched pool plans after meeting with Johnsons. On July 24, 2014, he provided Johnsons with a sales order and invoice for $5000 for the pool design fee. At trial, Lisa Johnson testified that she understood the $5000 would be a down payment on the pool installation and not a separate charge for pool design. Rolenc

---

[2] The actual sales tax added to the contract was approximately 1.5% of the total project.

disputed her testimony.  Johnsons paid the $5000 design fee on July 24, 2014.  The evidence showed that Rolenc's pool design drawings were incorporated into architectural plans completed by the Johnsons' architect.

The court concluded:

> None of the contract terms or attached specifications of the written contract included any discussion of pool design.  The court did not find persuasive any of the Johnsons' testimony that the parties had an oral agreement that the $5000 design fee was to be treated as a deposit on the pool installation contract.

The district court was correct.  A few weeks after paying the design fee, the Johnsons executed the contract, which contained the following payment schedule:

> The total contract price is $108,000.00 . . . and is payable as follows: (I) $40,000.00 upon acceptance of the contract; (2) $40,000 upon excavation and placement of pool shell in the ground; (3) $28,000 upon water filled and pressure tested, passing plumbing inspection, but no later than the day before concrete deck placement.

The contract did not provide for a deduction of the design fee from the contract price of $108,000.  Accordingly, the Johnsons were not entitled to have the design fee treated as a down payment on their contract.

## VI.    *Attorney Fees*

The Johnsons contend the district court abused its discretion in assessing trial attorney fees.  They acknowledge the court "had the authority" to award attorney fees.  *See* Iowa Code § 652.22 (2016) ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court.").  But they contend "the amount of fees awarded w[as] not reasonable."  We review a challenge to a district court's grant of attorney fees for an abuse of discretion.  *See NevadaCare, Inc.*, 783 N.W.2d at 469.

The district court thoroughly addressed the issue in a post-trial ruling:

> The court's June 11, 2017, order awarded attorney fees in accordance with the parties' written contract. The order was based upon the fees set out in Exhibit 63 ($12,390.50) regarding fees accrued between February 22 and February 28, 2017. However, the court inadvertently failed to consider the fees set out at Exhibit 60 (fees from December 2015—after the November 2015 breach—through February 22, 2017) in the amount of $24,305.00. Similarly, plaintiff's counsel submitted an additional affidavit of counsel dated June 17, 2017, to address fees accruing from March 1, 2017, through May 17, 2017 in the amount of $17,630.39. With the exception of the time billed on May 16 and 17, 2017 ($182.00) regarding an article and photographs in the Omaha World Herald that featured the Johnsons' pool, the court finds that these services were reasonable and necessary. The World Herald piece, while notable for its description of the Johnsons' pool and home remodeling project, was a post-trial publication that did not directly bear on plaintiff's bill collection efforts.
>
> Defendants shall be taxed attorney fees in the amount of $54,143.89.

We discern no abuse of discretion in the amount of fees awarded.

## VII.    *Computation of Interest*

The district court ordered "interest at the contract rate of 18% annual compounded per month should be awarded from the date of the filing of the petition." The Johnsons assert the interest should not have been compounded.

Although the general rule favors simple interest, parties to a contract may agree otherwise. *See Power Equip.*, *Inc. v. Tschiggfrie*, 460 N.W.2d 861, 864 (Iowa 1990) ("Compounding is prohibited absent an agreement between the parties which speaks directly to the matter of compounding."); *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 896 (Iowa 1990) ("The general rule in the United States is that, when interest is allowable, it is to be computed on a simple rather than a compound basis in the absence of express authorization to the contrary.").

The contract provided for "a late fee/interest equal to 1.5% (18% annual) or the highest allowable by law of the outstanding balance compounded per month [to] be added until paid, including any court ordered judgments." Because the contract provided for compound interest, the district court did not err in awarding interest on this basis.

## VIII. Appellate Attorney Fees

The contract signed by the parties provided: "Owner shall pay all costs and expenses of Contractor incurred in enforcing this contract, including . . . actual attorney fees at prevailing billing rates and court costs for negotiations, arbitration procedures, suits, and appeals." Aqua Palace asks this court to remand the case to the district court for a determination of an award of attorney fees incurred on appeal. We agree this is the proper procedure. *See NevadaCare, Inc.*, 783 N.W.2d at 470 ("When a contract contains a clear and express provision regarding attorney fees, the court's award must be for reasonable fees."); Iowa Code § 625.22 ("When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court.").

The judgment in favor of Aqua Palace is affirmed in its entirety.

**AFFIRMED AND REMANDED.**