# IN THE COURT OF APPEALS OF IOWA

No. 22-1721
Filed October 2, 2024

**BRADSHAW RENOVATIONS, LLC,**
Plaintiff/Counterclaim Defendant-Appellant/Cross-Appellee,

**vs.**

**BARRY GRAHAM and JACKLYNN GRAHAM,**
Defendants/Counterclaim Plaintiffs-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.


A construction contractor appeals an adverse jury verdict on homeowners' consumer-fraud claims and the district court's judgment on the contractor's unjust-enrichment and quantum-meruit claims, and homeowners cross-appeal their attorney-fees award. **AFFIRMED ON APPEAL AND CROSS-APPEAL AND REMANDED WITH DIRECTIONS.**


Matthew J. Hemphill of Bergkamp, Hemphill & McClure, P.C., Adel, for appellant.

Zachary J. Hermsen and Anna E. Mallen of Whitfield & Eddy, P.L.C., Des Moines, for appellees.


Heard by Schumacher, P.J., Langholz, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**LANGHOLZ, Judge.**

Barry and Jacklynn Graham contracted with Bradshaw Renovations, LLC to renovate their home. When the Grahams failed to pay Bradshaw Renovations' final invoice, it sued them for breach of contract, unjust enrichment, and quantum meruit. The Grahams counterclaimed for breach of contract and consumer fraud under Iowa Code section 714H.5 (2020). After a trial, the jury rejected Bradshaw Renovations' breach-of-contract claim and found for the Grahams on their claims, awarding them actual and treble statutory damages. The court dismissed Bradshaw Renovations' unjust-enrichment and quantum-meruit claims and awarded the Grahams attorney fees on the consumer-fraud claim.

Bradshaw Renovations appeals the consumer-fraud jury verdict and the court's dismissal of its unjust-enrichment and quantum-meruit claims. The Grahams cross-appeal their attorney-fee award and request appellate fees.

Given the considerable deference owed to the jury, we hold that substantial evidence supports the consumer-fraud verdict and that the court did not abuse its discretion in denying the motion for a new trial on the ground that the verdict failed to administer substantial justice between the parties. We also agree that the district court correctly dismissed Bradshaw Renovations' unjust-enrichment and quantum-meruit claims because they sought damages for matters covered by the parties' written contract. And we affirm on the Grahams' cross-appeal because they failed to raise their claimed error in the district court and thus failed to preserve it for our review. We agree that the Grahams are entitled to some appellate attorney fees but must remand to the district court to determine the amount since they have failed to submit an affidavit supporting their request.

## I.     Factual Background and Proceedings

*The Contract.*  Bradshaw Renovations and the Grahams agree that they entered into a written contract for the renovation of the Grahams' home in August 2019.  But they disagree whether the contract set a fixed price for the project or obligated the Grahams to pay for the time and materials spent on the project.  The contract includes a five-page itemization of labor and materials for the project totaling $136,168.16, which it describes as "the current estimate."  And it says that Bradshaw Renovations "will revise the estimate as we go to keep us up to date as things change for allowance and scope of work through out the project."  But the contract also describes "this estimate" as "an offer to you from Bradshaw Renovations, LLC, for the services and cost detailed herein."  It provides that the Grahams' "signature below constitutes acceptance of the offer and a binding contract."  And it sets a payment schedule requiring a $1000 "payment upon acceptance" and then "33% of estimate" to be paid "upon foundation work completion"; another "33% of estimate" to be paid "upon completion of drywall"; and the "[b]alance due" "upon completion" of the renovation.

The contract also includes a provision governing "[a]ny changes to the scope of services" after the Grahams' "acceptance of this estimate."  It requires Bradshaw Renovations to email any such changes to the Grahams.  And the Grahams must "immediately inform Bradshaw Renovations, LLC in writing and via email if the changes detailed are inaccurate."  If they fail to do so within three days of receiving Bradshaw Renovations' email, they are considered to have accepted "the proposed changes detailed by Bradshaw Renovations."

*The Project.* Bradshaw Renovations soon began work on the Grahams' home. In early September, Bradshaw Renovations emailed the Grahams a revised estimate—increasing it by $3000 to $139,168.16 because of additional required concrete work. And the Grahams responded the same day approving the change. This was the only revised estimate sent by Bradshaw Renovations during the project.

Despite the payment schedule set in the contract, Bradshaw Renovations periodically sent the Grahams invoices for the work performed up to that time. The invoices detailed specific labor and material expenses, some of which varied from the estimate. And the Grahams made payments on the invoices promptly.

In November 2019, after paying the first two invoices totaling about $22,000, the Grahams emailed Bradshaw Renovations first raising concerns about the communications and billing practices: "At this point, we are worried we will go over budget and need to make sure that we are communicating with one another each step of the way to avoid any potential issues from forming." They noted that "[a] lot has changed in terms of weather, what people did incorrectly, and what you've decided to change because of the weather." And they asked "to see this in written form so that we can approve of things, as per the terms of our written agreement."

Bradshaw Renovations replied three days later, "I have not changed your budget on the project since we have not made any cost changing decisions to this point." It also declined to give an updated estimate then, explaining that it only had a concern about one line item for which there was an allowance and it "will address [it] after I know what the expense incurred is." Jacklynn Graham testified she

remained in frequent contact with Bradshaw Renovations in person and via email throughout the project and Bradshaw Renovations never said it was over budget.

In March 2020, Bradshaw Renovations emailed its fifth invoice, stating in the cover email that "we are almost done." That invoice brought the total billed by Bradshaw Renovations on the project to $139,472.88—about $300 over Bradshaw Renovations' last estimate. Without complaint, the Grahams paid the "nice even number" of $28,000 rather than the invoiced amount of $27,374.09—which brought their total paid to Bradshaw Renovations up to $140,098.79. But then in May, Bradshaw Renovations emailed the Grahams a "[f]inal bill" for $18,779.15.

This time, the Grahams responded in minutes with concerns that the invoice was "exceptionally higher than what we talked about." Later that day, they wrote again explaining that they were starting to go "over line items" and were concerned that Bradshaw Renovations had billed nearly $20,000 more than its last estimate even though they had purchased their own flooring. And the Grahams expressed their desire "to understand and see how this is possible as we didn't do anything in excess with regards to our estimate." Over a series of emails, the Grahams asked for and received additional information and over a hundred pages of documentation from Bradshaw Renovations about all of its billing on their project.

A week after sending the final invoice, Bradshaw Renovations followed up by email about "getting all this cleaned up." Its owner "apologize[d] that I rushed the bill over and made some mistakes, but I am wanting to see if we need to sit down and go over items and clear up any confusion." The Grahams responded that the "charges are not making sense" and they were consulting an attorney about the situation about "how to move forward." They asked "[i]f there are

invoices you are willing to reduce or waive" and said they would "need a couple weeks to get back to you." But Bradshaw Renovations, after expressing disappointment and surprise, wrote back that it could "no longer communicate with" the Grahams "directly" and would expect to hear from their attorney.

*The Suit.* A few months later, Bradshaw Renovations sued the Grahams seeking payment for the final invoice under claims of breach of contract, unjust enrichment, and quantum meruit. The Grahams then counterclaimed for breach of contract and consumer fraud.[1] Eventually, both parties' breach-of-contract claims and the Grahams' consumer-fraud claim were tried to a jury over four days in August 2022. Bradshaw Renovations' unjust-enrichment and quantum-meruit claims were left for decision by the court after the jury's verdict and based on the evidence submitted at trial.

At trial, the Grahams sought to recover a distinct set of damages for each of their claims. On their breach-of-contract claim, they asked the jury to award them about $24,000 in damages to remedy "improper work" performed by Bradshaw Renovations under the contract. And on their consumer-fraud claim, they argued that Bradshaw Renovations overbilled them by about $40,000—and after subtracting out the amount they had not paid on the final invoice—asked for an award of $22,468.91 in actual damages. They contended that the contract was a time-and-materials contract and that Bradshaw Renovations misrepresented or omitted material facts and engaged in deception or fraud on its invoices causing

---

[1]The Grahams also brought a separate proceeding under Iowa Code § 572.32(2) to challenge a mechanic's lien filed by Bradshaw Renovations over their payment dispute. While the two cases were eventually consolidated, that challenge is not at issue on appeal.

them to pay more than the actual time and materials properly due under the contract. For example, they pointed to:

- Roughly $24,000 in overbilled labor charges billed at $60 per hour rather than the $45 per hour that Bradshaw Renovations had said it was charging.

- Nearly $14,000 in overbilled subcontractor expenses and materials above the amount actually spent by Bradshaw Renovations despite its statement that it was taking "no profit" on "subs and materials."

- An invoice including charges for a kitchen-sink faucet, estimated to be about $100, that the Grahams actually purchased themselves.

The Grahams also sought treble statutory damages, urging that Bradshaw Renovations' conduct and lack of remorse showed that it "acted with willful and wanton disregard for the rights of the Grahams" rather than "accident[ly]."

Bradshaw Renovations offered a contrary view of the evidence to the jury. It argued that the contract was for a fixed fee—not a time-and-materials contract. And it contended that its detailed descriptions of changed services on its periodic invoices provided the Grahams notice of changes to the contract's scope of services that were accepted by the Grahams when they did not dispute the changes in writing within three days. And so, Bradshaw Renovations claimed the Grahams breached their contract when they failed to pay the final invoice, and it thus asked to be awarded $18,779.15 in damages for that unpaid amount.

As for the Grahams' breach-of-contract claim, Bradshaw Renovations did not dispute that "some of this work" on the home "need[s to be] remedied." Rather, it questioned "what needs [to be] fixed and at what cost" and argued that because

the Grahams failed to mitigate by addressing any defects sooner when costs were lower, any damages should be reduced by twenty percent. And on the consumer-fraud claim, Bradshaw Renovations argued that the Grahams had failed to show any overbilling, material misrepresentations, or even any damages since the contract was for a fixed rate. It also contended that the evidence of its cooperation and answering of the Grahams' billing questions showed it had no intent to defraud them.

At the close of evidence, Bradshaw Renovations moved for a directed verdict on the consumer-fraud claim. As relevant here, it argued the Grahams had failed to present substantial evidence that they suffered actual damages, that Bradshaw Renovations engaged in any prohibited practice under the statute, or that its conduct was willful and wanton to support statutory damages. The district court denied the motion, and the case was submitted to the jury.

*The Decisions.* The jury found that Bradshaw Renovations failed to prove its breach-of-contract claim and found for the Grahams on both their claims. On the Grahams' breach-of-contract claim, the jury awarded $16,000 in damages. And on their consumer-fraud claim, it awarded them $10,000 in actual damages and $30,000 in statutory damages.

After the verdict, Bradshaw Renovations moved for judgment notwithstanding the verdict and a new trial on the consumer-fraud claim. The district court denied both motions. It held that substantial evidence supported the verdict, reasoning that the Grahams had presented enough evidence for a jury to find Bradshaw Renovations had improperly billed them more than $20,000 and that the jury in fact had "awarded $10,000 in actual damages, apparently

concluding some, but not all, of these alleged damages were caused by a violation of the consumer fraud statute." And on the new-trial motion, the court held that Bradshaw Renovations had "not demonstrated an excessive jury verdict or one that is not sustained by sufficient evidence or fails to do justice between the parties." The court again reasoned that the jury award for "less than what was requested on both claims" helped show "that the jury was not influenced by passion or prejudice."

The Grahams also asked the court to award $54,791 in attorney fees—the amount they incurred for the entire case—under the consumer-fraud statute's mandatory-attorney-fee provision. *See* Iowa Code § 714H.5(2). Bradshaw Renovations resisted the amount of the request, arguing that they were only entitled to fees on their consumer-fraud claim under the statute. And so, Bradshaw Renovations urged the court to exclude some fees related to expert testimony that had no relation to the consumer-fraud claim and to award only one-third of the remaining request because there were two other claims (each party's breach-of-contract claim) for which the Grahams should not recover fees. In reply, the Grahams did not offer a counterproposal on apportioning the fees and instead maintained their argument that they should be able to recover all their fees.

The court accepted neither party's proposed fee-award. While it agreed with Bradshaw Renovations that the Grahams were limited to recovering on fees related to the consumer-fraud claim and that $3055 in fees related to expert testimony that had no relation to the consumer-fraud claim should be excluded, it reduced the remaining fees by half rather than one-third. It reasoned that considering the "common questions of law and fact . . . among the claims and the

relationship" between the three claims, there were really only "two issues in the case: billing practices and defective/incomplete work," and so half of the fees were fairly related to the consumer-fraud claim. The court thus awarded the Grahams $25,868 in attorney fees.

Finally, the court dismissed Bradshaw Renovations' unjust-enrichment and quantum-meruit claims based on the evidence submitted at the jury trial. The court found that the parties' written contract covered the same subject matter as Bradshaw Renovations' implied-contract theories. Thus, the court reasoned that "[t]he Parties contracted for a procedure to approve changes to the scope of work" and "[t]o allow implied contract theories for an expanded scope of work would allow a Party to avoid the procedure established by the contract in an effort to recover."

*The Appeal.* Bradshaw Renovations appeals, arguing the district court erred in denying its motions for judgment notwithstanding the verdict and for a new trial on the consumer-fraud claim and in dismissing its unjust-enrichment and quantum-meruit claims. The Grahams cross-appeal, arguing the court abused its discretion in deciding the attorney-fees award. They also request appellate attorney fees.

## II. Consumer Fraud

Bradshaw Renovations focuses its appeal on four challenges to the jury verdict on the consumer-fraud claim. First, it argues that the Grahams failed to present any evidence to prove that they suffered an ascertainable loss due to the alleged consumer fraud since they have paid no more than they originally bargained under the renovation contract. Second, it argues that its conduct was not a prohibited practice under the consumer-fraud statute. Third, it argues that

there is no evidence of actual or legal malice necessary to support the award of treble statutory damages. For any of these reasons, Bradshaw Renovations contends the court erred in denying its motion for a judgment notwithstanding the verdict. *See* Iowa R. Civ. P. 1.1003(2). And finally, it argues that the court should have granted its motion for a new trial because "[t]he jury verdict failed to administer substantial justice between the parties."

Iowa's Private Right of Action for Consumer Frauds Act authorizes "[a] consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of [chapter 714H]" to "bring an action at law to recover actual damages." Iowa Code § 714H.5(1). A successful consumer may also be awarded statutory damages of up to three times the actual damages by showing the prohibited practice or act "constitutes willful and wanton disregard for the rights or safety of another." *Id.* § 714H.5(4). And a successful consumer awarded actual damages is entitled to an award of reasonable attorney fees. *See id.* § 714H.5(2).

We review the denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *Carter v. Carter*, 957 N.W.2d 623, 631 (Iowa 2021). A motion for judgment notwithstanding the verdict must be granted if any one of the claim's elements is not supported by substantial evidence. *Id.* at 635. "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* (cleaned up). We view the evidence in the light most favorable to the nonmoving party, making all reasonable inferences a jury could make. *Id.* "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually

made, not whether the evidence would support a different finding." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (cleaned up).

*Ascertainable Loss.* Bradshaw Renovations first argues that the Grahams failed to show they suffered "an ascertainable loss." Iowa Code § 714H.5(1). It relies on *Poller v. Okoboji Classic Cars, LLC*, 960 N.W.2d 496 (Iowa 2021), in which the supreme court held that the plaintiffs had not suffered an ascertainable loss from two consumer-fraud violations when they failed to present any evidence that either violation caused them to spend more or receive less than they expected to under their services agreement with the defendant.[2] *See id.* at 522–24. The violations there were of specific statutory requirements of the Motor Vehicle Service Trade Practices Act related to providing advance estimates of costs or completion and obtaining preapproval before performing certain services. *See id.* at 523. And the plaintiffs failed to show "that they would have paid less than" the $45,000 they did pay or "that they would not have approved the charges in advance" if the violations had not occurred. *Id.*

Bradshaw Renovations argues the Grahams similarly failed to show that they paid any more—or received anything less—than they expected under their home-renovation contract. At first blush, the argument has some appeal—the Grahams did indeed pay a total of $140,098.79, while the revised contract estimate

---

[2] The court did not precisely define "ascertainable loss." *Poller*, 960 N.W.2d at 522–23. But it found "guidance for understanding the term" in slightly varying interpretations by out-of-state courts that generally included the concepts that the loss is "measurable" and involved "getting something less than you bargained for." *Id.* (cleaned up); *see also Simonsen v. Sandy River Auto, LLC*, 413 P.3d 982, 985 (Or. 2018); *Discover Bank v. Morgan*, 363 S.W.3d 479, 496 (Tenn. 2012); *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814 (Conn. 1981).

was about the same—$139,168.16. But the problem with the argument is that it assumes the parties contracted for completion of the renovations at the fixed price listed as the estimate—rather than a price tied in some way to the actual time and materials used on the project. This was one of the key disputes between the parties throughout the trial. And the jury could have agreed with the Grahams that contract did not fix the price and that the Grahams thus had a contractual expectation to pay a price lower than the estimate given Bradshaw Renovations' actual time and materials costs. And so, the jury could have found that Bradshaw Renovations' billing practices—which the Grahams claimed were consumer fraud that deceived them into paying more than the actual time and materials cost—caused them to pay more than they expected under the contract.

Specifically, the Grahams argued that Bradshaw Renovations misrepresented or omitted material facts and engaged in deception or fraud on its invoices by billing $41,248.06 more than the actual time and materials properly due under their contract. And factoring in the final $18,779.15 invoice that the Grahams left unpaid, they claimed a loss of $22,468.91 from these practices. They supported this claim with testimony and exhibits, including a detailed itemization of twenty-seven instances of erroneous billings on the invoices. The jury awarded about half the requested amount: $10,000 in actual damages. And two categories of improper billings easily show losses supporting that award—even factoring in the $18,799.15 billed amount the Grahams did not pay. First, the evidence that Bradshaw Renovations overbilled roughly $24,000 in labor charges by billing at $60 per hour rather than the $45 per hour that it said it was charging. And second, the evidence that it overbilled nearly $14,000 in subcontractor expenses and

materials above the amount it actually spent—despite its statement that it was taking "no profit" on "subs and materials."

We understand that Bradshaw Renovations continues to disagree with the Grahams view of the facts. But we do not get to weigh the evidence anew on appeal from a jury verdict. And it matters not whether substantial evidence could have supported a contrary verdict too. *See Lacey*, 968 N.W.2d at 800–01. We ask only whether a reasonable jury could have reached the verdict that this jury did. *See id.*

We also realize that there may be some tension between this view of the evidence supporting the jury's consumer-fraud verdict and the view that might best support its breach-of-contract verdicts. But the parties only requested a general verdict on each claim. So we do not know whether the jury found the contract to be for a fixed price as we would if the parties had requested special verdicts or a special interrogatory on that question. *See Clinton Phys. Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 610–11 (Iowa 2006) (discussing the distinctions between a "general verdict, special verdict, or general verdict with special interrogatories," including the role of special interrogatories in "test[ing] the general verdict against the jury's conclusions as to the ultimate controlling facts" (cleaned up)); *see also* Iowa Rs. Civ. P. 1.932–1.934. And Bradshaw Renovations did not challenge the verdicts as inconsistent in the district court, nor does it on appeal. *See Clinton Phys. Therapy*, 714 N.W.2d at 611–14 (reviewing challenge to inconsistent verdicts); *Pavone v. Kirke*, 801 N.W.2d 477, 496 (Iowa 2011) (warning of the need to object to instructions and verdict form that "invite inconsistent verdicts"). What's more, only the consumer-fraud verdict is before

us—Bradshaw Renovations did not appeal its adverse verdicts on either its or the Grahams' breach-of-contract claims. So we need not—indeed, cannot—consider whether substantial evidence supports those breach-of-contract verdicts too.

Bottom line, because substantial evidence supports the jury's finding that the Grahams suffered an ascertainable loss of $10,000 in actual damages, we affirm the district court's denial of Bradshaw Renovations' motion for judgment notwithstanding the verdict on this ground.

*Prohibited Practice.* Bradshaw Renovations also argues the Grahams failed to provide substantial evidence that it engaged in a prohibited practice under the consumer-fraud statute. This statute prohibits a person from "engag[ing] in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the" act "in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes." Iowa Code § 714H.3(1).

The consumer-fraud statute applies to misrepresentations by home-construction contractors like Bradshaw Renovations. *See Scenic Builders, L.L.C., v. Peiffer*, No. 10-0794, 2011 WL 2078225, at *2 (Iowa Ct. App. May 25, 2011). And the same evidence of overbilling for labor, subcontractor, and materials that supports the finding of an ascertainable loss also supports a finding that the conduct is a prohibited practice. We need not define the precise boundaries of each of the enumerated acts prohibited the statute because the jury could have found that Bradshaw Renovations made knowing misrepresentations and

omissions of material facts in its itemized invoices with the intent that the Grahams rely on them by making payments above what they properly owed under the contract. And this is well within the heartland of the consumer-fraud statute.

Bradshaw Renovations' argument on appeal essentially challenges the weight of this evidence, arguing the Grahams' evidence is not credible. But under substantial-evidence review, "[o]ur task is not to weigh the evidence or the credibility of the witnesses. Rather, our task is to determine whether substantial evidence supports the district court's findings according to those witnesses whom the court believed." *Tim O'Neill Chevrolet, Inc. v. Forristall,* 551 N.W.2d 611, 614 (Iowa 1996) (cleaned up); *see also State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). The district court did not err in holding that substantial evidence supports the jury's finding that Bradshaw Renovations engaged in a prohibited practice.

*Statutory Damages.* Bradshaw Renovations next argues the evidence cannot support the jury's award of $30,000 in statutory damages. A jury may award statutory damages of up to three times the actual damages if it finds "by a preponderance of clear, convincing, and satisfactory evidence that a prohibited practice or act in violation of [chapter 714H] constitutes willful and wanton disregard for the rights or safety of another." Iowa Code § 714H.5(4). No appellate court has yet considered whether substantial evidence supports an award of statutory damages under section 714H.5(4) since its enactment in 2009. *Cf. Calderon v. Khan*, No. 20-0489, 2021 WL 3896892, at *4 (Iowa Ct. App. Sept 1, 2021) (holding that challenge to denial of statutory damages under

section 714H.5(4) was waived by insufficient appellate briefing); *Poller*, 960 N.W.2d at 524 (holding that statutory damages were unavailable when there is "no ascertainable loss" but also noting that the technical violations found there as a matter "of first impression in Iowa" could not "amount to willful and wanton" conduct supporting an award).

But the text of the consumer-fraud statutory damages provision is nearly identical to our general punitive-damages statute and covers a similar subject. *Compare* Iowa Code § 714H.5(4), *with id.* § 668A.1(1)(a) (authorizing punitive or exemplary damages only if, "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another"). The meaning of the general punitive-damages statute is well developed. So we look to the precedent interpreting that statute when applying the same text in this statute. *See State v. McPhillips*, 580 N.W.2d 748, 755 (Iowa 1998) (looking to precedent "interpreting identical language in a similar statute"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 172–73 (2012); *see also Calderon*, 2021 WL 3896892, at *4 (citing punitive-damages precedent to interpret section 714H.5(4)).

The supreme court has explained that "conduct is 'willful and wanton' when the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013) (cleaned up). While "mere negligent" or "objectionable conduct" alone does not meet this

standard, "persistent" reckless conduct can. *Cawthorn v. Cath. Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (cleaned up); *see also Miranda*, 836 N.W.2d at 34 (finding substantial evidence to infer recklessness supporting punitive damages). Put another way, consumer-fraud statutory damages are proper if the jury could find Bradshaw Renovations engaged in "wrongful conduct . . . with a . . . reckless disregard for the rights of" the Grahams.[3] *Cawthorn*, 743 N.W.2d at 529.

Bradshaw Renovations argues that its conduct does not meet this standard mainly by reiterating its previous arguments—that the Grahams suffered no loss because they "paid what they expected," that "[t]hey did not overpay," and "[a]ny errors in billing were minor." But again, Bradshaw Renovations asks us to accept its view of the evidence when that is not the only reasonable conclusion that could be drawn from the evidence. The jury was aware of the parties' different views of the evidence—the Grahams' attorney highlighted the nub of the question in his closing argument about statutory damages: "Was it all an accident, [a] big accident, or was it willful? You got to decide that based on all the evidence." So while the jury could have believed Bradshaw Renovations' explanations, it did not.

Rather, it found the Grahams' view of the evidence more credible. Given the ten months of Bradshaw Renovations' interactions with the Grahams, and five invoices containing itemizations of costs that the jury could have found were false, the jury could have found that Bradshaw Renovations engaged in a persistent

---

[3] The supreme court has also recognized that willful and wanton conduct "may be shown by such things as personal spite, hatred, or ill-will," often referred to as "actual malice." *Cawthorn*, 743 N.W.2d at 529 (citation omitted). But the Grahams have not advanced such a theory of the evidence here.

course of wrongful conduct that financially harmed the Grahams—recklessly disregarding the Grahams' rights under the contract. *See Miranda*, 836 N.W.2d at 34–35 (holding that evidence "support[ing] a deductive inference that [the defendant] lied" provided substantial evidence of willful and wanton conduct). Giving proper deference to the jury's role, the evidence here is enough to impose statutory damages. The district court did not err in denying Bradshaw's motion for judgment notwithstanding the verdict on this final ground either.

*Motion for a New Trial.* Bradshaw Renovations' last try to overcome the jury verdict is that the district court should have granted a new trial because the "verdict failed to administer substantial justice between the parties." While this is not a ground for a new trial under Iowa Rule of Civil Procedure 1.1004, our supreme court has "long recognized a trial court has inherent power to grant a new trial" on this basis. *Crow v. Simpson*, 871 N.W.2d 98, 108 (Iowa 2015). But "the reason the verdict fails to administer substantial justice must be apparent in the record." *Id.* And it is not enough merely that the court "would have reached a different result." *Id.* Still, the "district court has broad discretion in deciding whether to grant or deny a new trial" on this ground. *Id.* And we will reverse only for an abuse of that discretion. *See id.* at 105.

The district court did not abuse its discretion in denying the motion for a new trial. Bradshaw Renovations makes only a cursory contrary argument on appeal, reiterating in one sentence the same contentions already discussed that the "Graham[s] do[] not have an ascertainable loss and there is not *clear, convincing and satisfactory evidence* Bradshaw [Renovations] engaged in willful and wanton conduct justifying treble damages." But we have already found those contentions

lacking to support a judgment notwithstanding a verdict. And we cannot say that the district court abused its broad discretion in deciding that no failure to administer substantial justice was apparent from this record. We thus affirm the district court's denial of the motion for a new trial.

### III. Unjust Enrichment and Quantum Meruit

Bradshaw Renovations also argues that despite the jury's rejection of its breach-of-contract claim seeking payment on an unpaid invoice for the renovation, the district court should have ruled in its favor on its alternative equitable claims of unjust enrichment and quantum meruit for the same unpaid invoice. The parties agree that these claims were tried to the court in equity, so our review is de novo. *See Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020). We give weight to the district court's findings of fact, but we are not bound by them. *See* Iowa R. Civ. P. 6.904(3)(g).

"The doctrines of unjust enrichment and quantum meruit are based upon the concept of implied contract." *Kunde v. Est. of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018). "An express contract and an implied contract cannot coexist with respect to the same subject matter, and the former supersedes the latter." *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (cleaned up). Although "implied contract theories may coexist with written contracts, the cases involve situations where recovery was sought for matters not covered or agreed upon in the contract, or where a contract does not address a particular term that the facts and circumstances suggest should be supplied by implication." *Kunde*, 920 N.W.2d at 807 (cleaned up).

Bradshaw Renovations concedes that the parties had a written contract for renovation of the Grahams' home. But it argues that the scope of the renovation expanded beyond that described in the contract and it is thus entitled to equitable recovery for its work outside the contract. To support its argument, Bradshaw Renovations relies on our decision in *Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402 (Iowa Ct. App. 1994). There, in considering a breach-of-contract claim—rather than quantum meruit or unjust enrichment—we said in dicta that "a builder may recover from an owner for extras ordered or agreed upon which were not covered by the contract." *Id.* at 407. But all we held—ruling against the builder who had appealed—was that the items it "claimed were extras were actually agreed to prior to the execution of the contract" and the district court thus properly awarded damages to the homeowner for the builder's failure to provide them. *Id.* And the contract there did not have a provision expressly setting a process for adding on "extras" or otherwise changing the scope of work. *See id.* at 405.

But here we do have such a provision. As the district court found, the parties contracted for a major renovation of the Grahams' home with a provision for changing the scope of the work. Bradshaw Renovations' failure to follow the contractual process to change the scope of work does not take its additional work outside the subject matter of the contract. *See Kunde*, 920 N.W.2d at 808 (finding "the parties entered into an express written agreement related to the farmland improvements" and the contractor cannot "use theories of unjust enrichment and quantum meruit to recover for improvements to which he was plainly not entitled under the terms of the contract"). Because all of Bradshaw Renovations' work on the Grahams' home was within the subject matter of the contract, Bradshaw

Renovations cannot recover for its claims of unjust enrichment and quantum meruit. We thus affirm the district court's dismissal of these claims.

### IV. Cross-Appeal of Attorney-Fee Award

The Grahams cross-appeal, arguing the district court should have awarded them $1865.75 more in attorney fees on their consumer-fraud claim. They originally requested $54,791 in attorney fees—the amount spent litigating the entire case. But the district court awarded $25,868—the amount it calculated was reasonably related to the consumer-fraud claim—because the Grahams based their request on Iowa Code section 714H.5(2), which authorizes an award of reasonable attorney fees in a successful consumer-fraud action. *See Lee v. State*, 874 N.W.2d 631, 649 (Iowa 2016) (holding that when attorney fees are available for only some claims in the proceeding, the court may award any fees "involving a common core of facts or based on related legal theories" (cleaned up)). The court calculated this amount by removing $3055 in fees related to expert testimony that had no relation to the consumer-fraud claim and then awarded half of the remaining amount for the "general time entries that are not clearly applicable to a specific claim."

The Grahams' argument on appeal is narrow. They do not challenge the district court's general analysis. Rather, they point to $3731.50 in fees for legal services that they contend are "directly applicable" to the consumer-fraud claim and should thus be paid in full rather than split in half as general time entries. And so, they ask us to increase the award by $1865.75—the other half of the amount that the district court did not award for these services.

But "[i]t is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This gives the district court a chance to correct the error itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). It "preserve[s] judicial resources by avoiding proceedings that would have been rendered unnecessary had an earlier ruling on the issue been made." *Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000). And it ensures that we act as a court of *appeals*, reviewing a decision already made by the district court rather than considering it for the first time on appeal.[4] *See Meier*, 641 N.W.2d at 537.

The Grahams did not argue in the district court that these $3731.50 in attorney fees were "for work directly applicable to" their consumer-fraud claim. There, they staked their claim solely on an argument that their entire amount was reasonable and authorized under Iowa Code section 714H.5(2) because the multiple claims were "inextricably intertwined." But they do not continue to pursue that broader argument on appeal. And even after the court rejected their argument and apportioned the fees, they did not raise this issue through a motion to reconsider or enlarge to give the district court the chance to address it. *See* Iowa

---

[4] We recognize that Bradshaw Renovations did not address error preservation and concedes that part of the disputed fees relate to the consumer-fraud claim. But the error-preservation requirement protects more "than simply the interests of the opposing party." *Top of Iowa Co-op*, 608 N.W.2d at 470. So we consider whether error is preserved even when it has been ignored—or conceded—by the opposing party on appeal to protect all the interests it serves. *See id.*; *State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001) ("Although the State concedes that error has been preserved . . . , we disagree.").

R. Civ. P. 1.904(2).  So they have failed to preserve this claim of error for our review.  And because they raise no other challenge to the award, we affirm.

### V.      Appellate Attorney Fees

The Grahams request appellate attorney fees.  Because the Grahams prevailed on their consumer-fraud claim, appellate attorney fees are mandatory.  *See* Iowa Code § 714H.5(2) ("If the court finds that a person has violated [chapter 714H] and the consumer is awarded actual damages, the court *shall award* . . . to the consumer's attorney reasonable fees." (emphasis added)).  The Grahams did not request any specific amount of fees, nor did they submit an attorney-fee affidavit for us to determine the amount of reasonable appellate attorney fees.  *See In re Marriage of Samuels da Fonseca Silva*, No. 23-0685, 2024 WL _____, at *__ (Iowa Ct. App. Oct. 2, 2024).  We thus remand the case to the district court with directions to decide the amount of the award for reasonable attorney fees attributable only to defending the consumer-fraud verdict on appeal.  *See id.*

**AFFIRMED ON APPEAL AND CROSS-APPEAL AND REMANDED WITH DIRECTIONS.**